**Reversed and Remanded and Opinion filed January 10, 2012.**



In The

# Fourteenth Court of Appeals

NO. 14-10-00630-CV
NO. 14-10-00902-CV

**RAPID SETTLEMENTS, LTD AND RSL FUNDING LLC, Appellants**

**V.**

**SETTLEMENT FUNDING, LLC D/B/A PEACHTREE
SETTLEMENT FUNDING, Appellee**

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause Nos. 2006-23366B, 2006-23366**

## O P I N I O N

Rapid Settlements Ltd. ("Rapid") challenges the trial court's award of attorney's fees to Settlement Funding, LLC d/b/a Peachtree Settlement Funding ("Peachtree) in cause number 14-10-00630-CV. Additionally, Rapid and RSL Funding LLC (RSL Funding) challenge the trial court's grant of a temporary injunction to Peachtree in cause number 14-10-00902-CV. Because Rapid raised a fact issue regarding the necessity of fee segregation, we reverse and remand cause number 14-10-00630-CV for a new trial. Additionally, we conclude that the temporary injunction entered against Rapid and RSL

Funding is overbroad, and we reverse and remand to the trial court for a new hearing in cause number 14-10-00902-CV.

## BACKGROUND

These appeals involve a series of disputes between competitors in the secondary market for structured settlement payment rights. Rapid, RSL Funding, and Peachtree are all "factoring companies." These companies purchase future income streams from individuals who are entitled to receive future payments, typically as compensation for the settlement of personal injury claims. They offer to buy an individual's future income stream in exchange for an immediate lump sum payment. Because of the risk for abuse inherent in such arrangements, most states, including Texas, have enacted statutes requiring court approval of proposed transfers of settlement funds. *See* Tex. Civ. Prac. & Rem. Code §§ 141.001–.007 (detailing the Texas "Structured Settlement Protection Act").

This case began when Peachtree sued Rapid regarding an agreement between Rapid and Simmie Bernard King. On Peachtree's motion, the district court consolidated the King suit with two other pending lawsuits involving similar disputes over Rapid's right to enforce arbitration clauses in agreements with two other individuals—Evelyn Franklin and William Maxwell. Peachtree and Maxwell then sought summary judgment relating only to the Maxwell matter. The trial court granted Peachtree's summary-judgment motion and severed the Maxwell dispute into a new cause number (Trial Court Cause No. 2006-23366-A), making that judgment final.[1] The other two disputes involving King and Franklin remained pending in the trial court (Trial Court Cause No. 2006-23366).

Peachetree and King subsequently moved for summary judgment on the King matter (the "King summary judgment"). Franklin was not a party to this summary-judgment motion. In the King summary-judgment motion, Peachtree and King sought a

---

[1] This judgment was appealed to our court, and we issued an opinion affirming in part and reversing and remanding in part. *See Rapid Settlements, Ltd. v. Settlement Funding, LLC*, No. 14-09-00637-CV, 2010 WL 3604182, at *1, *4–5 (Tex. App.—Houston [14th Dist.] Sept. 9, 2010, no pet.).

declaratory judgment and injunctive relief regarding Rapid's attempt to arbitrate its claims against them. The trial court granted the King summary judgment on April 7, 2010. The judgment signed by the trial court stated:

> This Court, having considered Plaintiff Settlement Funding, LLC d/b/a Peachtree Settlement Funding and Plaintiff Simmie Bernard King's First Amended Traditional Motion for Summary Judgment against Defendant Rapid Settlements, Ltd. ("Rapid"), the response thereto, the summary judgment evidence, the arguments of counsel, if any, and the vexatious and intertwined nature of Rapid's conduct during the course of litigation, is of the opinion that Summary Judgment should be granted in favor of Plaintiffs Settlement Funding, LLC d/b/a Peachtree Settlement Funding ("Peachtree") and Plaintiff Simmie Bernard King (collectively "Plaintiffs"). It is therefore,
>
> ORDERED that Plaintiffs' Traditional Motion for Summary Judgment against Defendant Rapid, is in all things GRANTED. It is further,
>
> ORDERED that neither Plaintiffs are required to arbitrate any dispute with Defendant Rapid relating to or regarding any of the matters in this lawsuit or any matters that could have been brought in this lawsuit. It is further,
>
> ORDERED that Defendant Rapid is permanently enjoined from filing, pursuing or proceeding with any arbitration proceeding involving Plaintiffs in any matter, on any transaction, either with King or with any other annuitant or related third party. It is further,
>
> ORDERED that Defendant Rapid pay Peachtree the amount of $307,119.43 for expenses, costs, and attorneys' fees incurred to date on behalf of Plaintiffs. . . .

The King summary judgment concludes as follows: "This Final Judgment disposes of all parties and all claims and is final."

On August 13, 2010, Peachtree, King, and Franklin filed a supplemental petition, which brought RSL Funding into the consolidated action. The supplemental petition added claims by Peachtree, King, and Franklin against RSL Funding for tortious interference and fraudulent transfer, alleging that RSL Funding is Rapid's alter ego. That same day, Peachtree sought a temporary restraining order and temporary injunction against Rapid and RSL Funding based upon Rapid and RSL Funding's alleged

3

interference with other contracts Peachtree had entered into with other parties. The trial court entered a temporary restraining order against Rapid and RSL Funding on August 13. Rapid and RSL Funding filed a motion to strike the supplemental petition and Peachtree's application for a temporary restraining order and temporary injunction, asserting that the King summary judgment was a clear and unequivocal final judgment. Rapid and RSL therefore contended that the trial court's plenary power had expired before the supplemental petition and application for a temporary restraining order and temporary injunction were filed. The trial court heard Peachtree's application for a temporary injunction on August 24, 2010. At the hearing, the trial court first denied Rapid and RSL Funding's motion to strike. Peachtree proceeded on its temporary-injunction application.

Peachtree presented the testimony of Jason Sutherland, the vice president of legal affairs for Peachtree and the managing director of legal and operations for Peachtree Asset Management. Sutherland explained that, in approximately 2004 or 2005, Peachtree had used the law firm of Feldman Hanszen to represent it in seeking approval of structured settlement transfers. Sutherland discovered that Stewart Feldman had set up a company, Rapid, that directly competed with Peachtree. Sutherland testified that Rapid was involved in the same business as Peachtree—purchasing structured settlement payments. He stated that Peachtree had obtained Texas judgments against Rapid for approximately $500,000 that Peachtree had been unable to satisfy, and had outstanding judgments against Rapid of approximately $65,000 in other states.

Sutherland described Peachtree's business mode as follows:

> What Peachtree does to find its customer base is employ[] a nation-wide advertising campaign where it spends tens of millions of dollars per year via radio, print, mass media, television commercials, et cetera, to ascertain, you know, structured settlement customers.

> There is no ready database that somebody can go out and find customers. . . . The only way to actively find them is to go and employ an advertising campaign, because this way, the individuals will watch the television commercial and then call an 800 number to speak with an

4

account executive or representative of Peachtree to discuss the sale of those particular payments.

Sutherland described Rapid's business practices, on the other hand, as follows:

> We discovered rather quickly that Rapid was -- or has employed a scheme whereby they search courthouse records and obtain a list of filed petitions where people are seeking to transfer their payments and then will actually go and knock on the individuals' front doors and either hand them a contract to sign on the spot selling payments or will drop the contract on their front doorstep anticipating a phone call to enter into a contract with Rapid and to void the existing Peachtree contract.

Through Sutherland, two letters were admitted into evidence, both of which were from RSL Funding and both of which were targeted at Peachtree customers seeking to have the annuitant terminate his or her relationship with Peachtree. Sutherland testified that RSL Funding has been "trolling courthouse records looking for filed petitions not only against Peachtree but against other companies as well," in much the same manner that Rapid had operated. Sutherland stated that Rapid's and RSL Funding's successes in convincing Peachtree annuitants to terminate their agreements with Peachtree has caused Peachtree money damages and additional damages, such as difficulty operating its business because it was "constantly in court fighting against one particular competitor." He further stated that his experience led him to believe that Peachtree could not currently collect a money judgment from Rapid or RSL Funding because "[i]t's quite clear that Rapid Settlements will do anything to avoid paying on a money judgment to Peachtree."

Sutherland testified regarding numerous cease-and-desist letters that Peachtree sent to Rapid and RSL Funding regarding their solicitation of Peachtree's clients. Neither Rapid nor RSL Funding responded to these letters or stopped their attempts to solicit Peachtree's clients. Sutherland explained that Rapid and RSL Funding's conduct in interfering with Peachtree's clients had cost Peachtree a great deal of money, including overhead expenses, and had damaged Peachtree's reputation and had impacted Peachtree's goodwill with its customers. Sutherland explained that Peachtree's reputation and loss of customers could not be quantified as money damages. Finally,

Sutherland stated that he did not believe that money damages would be collectable from either Rapid or RSL Funding.

On cross-examination, Sutherland admitted that Peachtree could allocate a cost involved in advertising, marketing, overhead, costs, et cetera associated with an average transaction between Peachtree and an annuitant. However, Sutherland explained that calculating monetary losses per annuitant does not take into consideration any future business Peachtree may have had with that individual and the loss of goodwill associated with the loss of the client.

At the close of the hearing, the trial court granted the temporary injunction, enjoining Rapid and RSL Funding from (a) interfering with Peachtree's contracts, (b) searching court filings for the purpose of finding "structured settlement agreements with Peachtree that are pending approval," and (c) approaching or entering into agreements with existing Peachtree customers.

The trial court denied Rapid and RSL Funding's motion to strike on September 13, 2010, holding that "this matter is still pending without a final judgment being entered as to all parties and all claims." It further directed the parties to move for severance of the King-related claims adjudicated through the King summary judgment so that the King summary judgment could become final. The trial court severed the King summary judgment into cause number 2006-23366-B on September 13, 2010 and modified and replaced the King summary judgment on October 5, 2010 with a final judgment. This judgment provides:

> This Order hereby MODIFIES and REPLACES the order entered on April 7, 2010. The Court found that the attorneys' Fees presented as summary judgment evidence are reasonable and necessary, are supported by the evidence, and that they need not be segregated, as all claims are recoverable and, even if they are not all legal services advanced both recoverable and nonrecoverable claims, and such claims were intertwined, as argued.
>
> In addition, the Court considered Rapid's Motion for Continuance and/or Motion to Strike, and the Court, after considering these motions,

6

Plaintiffs' Response, the evidence presented and the arguments of counsel, is of the opinion that the Motion for Continuance and/or Motion to Strike should be, in all things, DENIED. There are no remaining claims in this case, severed into cause number 2006-23366-B. The Court now enters this Final Judgment.

It is DECLARED that, with regard to Plaintiff King, (1) the Georgia court's order be given full faith and credit; (2) that the provision in the purported agreement between . . . Mr. King and Rapid required court approval of the agreement as a condition precedent; (3) that the purported agreement between Rapid and Mr. King be declared unenforceable: (4) that Mr. King cannot be compelled to arbitration: and (5) that Peachtree be awarded all fees and costs it paid on behalf of Mr. King. It is further

DECLARED that, with regard to Plaintiff Peachtree, there is no agreement to arbitrate between Peachtree and Rapid. It is further

ORDERED that Rapid's Motion for Continuance is DENIED. It is further

ORDERED that Rapid's objections are hereby DENIED. It is further

ORDERED that Rapid's Motion to Strike is DENIED. It is further

ORDERED that Defendant Rapid is permanently enjoined from filing, pursuing or proceeding with any arbitration proceeding involving Plaintiffs in any matter, on any transaction, either with King or with any other Peachtree annuitant, customer, or related third party. It is further

ORDERED that Peachtree has the sole contractual right to receive a portion of Mr. King's structured settlement payments from BHG Structured Settlement, Inc. It is further

ORDERED that Defendant Rapid pay Peachtree the amount of $307,119.43 for expenses, costs, and reasonable attorneys' fees incurred to date on behalf of Plaintiffs.

Rapid appealed that judgment in our cause number 14-10-00630-CV.[2] The other claims against Rapid and RSL Funding remained pending in the trial court in cause number 2006-23366. The temporary injunction was entered under that cause number; Rapid and RSL Funding timely appealed the trial court's grant of the temporary injunction in our cause number 14-10-00902-CV.

---

[2] Rapid filed its notice of appeal prematurely on July 6, 2010, appealing from the trial court's interlocutory summary-judgment signed on April 7, 2010. However, we deem its notice of appeal as filed on the day of, but after, the event that begins the period for perfecting its appeal. Tex. R. App. P. 27.1. Additionally, Rapid filed an amended notice of appeal on December 17, 2010 from the final judgment signed October 5, 2010.

## ANALYSIS

### A.   Attorney's Fees – Appellate Cause No. 14-10-00630-CV

In a single issue in this appeal, Rapid asserts that the trial court abused its discretion by awarding Peachtree and King attorney's fees under the Declaratory Judgment Act.[3]  Rapid asserts several arguments in support of this issue:

- The award of $307,119.43 in attorney's fees and costs in a summary-judgment proceeding was unreasonable, unnecessary, inequitable, and unjust;

- A controverting affidavit raised a fact issue regarding the attorney's fees awarded such that judgment as a matter of law was precluded;

- The summary-judgment proof was factually and legally insufficient to support the trial court's award of attorney's fees;

- Peachtree's failure to satisfy the *Anderson* and *Ragsdale* factors is fatal to its claim for attorney's fees;

- Failure to segregate between recoverable claim (declaratory judgment action) and other nonrecoverable claims (tort claims for tortious interference and defending against Rapid's counterclaim) precludes the award of the fees;

- Peachtree failed to segregate its fees between itself and King; and

- The trial court abused its discretion in denying Rapid's motion to strike and motion for continuance, which prevented exposure of hidden information in Peachtree's attorney's fee invoices.

In any proceeding under the Uniform Declaratory Judgments Act (the "UDJA"), a court may award costs and attorney's fees subject to certain requirements.  Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008).  The UDJA entrusts attorney's fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law.  *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998).  In reviewing an attorney's fee award under the

---

[3] In this appeal, Rapid only challenges the trial court's award of attorney's fees.  Thus, we affirm the remainder of the trial court's judgment against Rapid, including the trial court's permanent injunction preventing Rapid from "filing, pursuing or proceeding with any arbitration proceeding involving Plaintiffs in any matter, on any transaction, either with King or with any other Peachtree annuitant, customer, or related third party."

UDJA, we review the evidence for factual sufficiency. *Id.* In considering whether attorney's fees are reasonable and necessary, we are guided by the non-exhaustive list of factors set forth in disciplinary rule 1.04. *See id.* Those factors include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Tex. Disciplinary R. Prof'l Conduct 1.04, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Texas State Bar R. art. X, § 9). A court is not required to receive evidence on each of these factors before awarding attorney's fees. *State & Cnty. Mut. Fire Ins. Co. ex rel. S. United Gen. Agency of Tex. v. Walker*, 228 S.W.3d 404, 408 (Tex. App.—Fort Worth 2007, no pet.) (citing *Hays & Martin, L.L.P. v. Ubinas-Brache*, 192 S.W.3d 631, 636 (Tex. App.—Dallas 2006, pet. denied), *Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 897–98 (Tex. App.—Dallas 2003, no pet.), and *Hagedorn v. Tisdale*, 73 S.W.3d 341, 353 (Tex. App.—Amarillo 2002, no pet.)). The court may also consider the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties. *E.g.*, *Cordova v. Sw. Bell Yellow Pages, Inc.*, 148 S.W.3d 441, 448 (Tex. App.—El Paso 2004, no pet.); *Hagedorn*, 73 S.W.3d at 353. Although reasonableness of an attorney's fee award usually presents a

9

question of fact, an affidavit filed by the movant's attorney that sets forth his qualifications, his opinion regarding reasonable attorney's fees, and the basis for his opinion will be sufficient to support summary judgment, if uncontroverted. *Gaughan v. Nat'l Cutting Horse Ass'n*, — S.W.3d —, No. 02-09-00450-CV, 2011 WL 3211217, at *11-12 (Tex. App.—Fort Worth Jul. 28, 2011, no pet.) (quoting *Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884, (Tex. App.—Texarkana 2009, pet. denied).

Here, in an affidavit supporting the King summary-judgment motion, L. Bradley Hancock, a shareholder in the law firm representing King and Peachtree, stated that he was familiar with the nature and extent of legal services provided on Peachtree and King's behalf, that Peachtree paid for King's legal representation, that he was familiar with the hourly rates charged by other law firms for similar legal services, and that the rate charged by the law firm representing Peachtree and King was not only reasonable, but less than what many other firms would have charged. He stated that he based his opinion on factors nearly identical to those listed above (with the exception of number 8). Finally, he stated that this matter was filed almost four years prior to his affidavit and that "the amount expended was . . . reasonable and appropriate given the vexatious litigation tactics of opposing counsel." Attached to his affidavit were heavily redacted copies of invoices provided to Peachtree, each of which indicated they were "Re: Simmie B. King adv. Arbitration Rapid Settlements, Ltd."

Rapid filed a controverting affidavit. In this affidavit, John Craddock, an attorney with the firm representing Rapid, stated in pertinent part, as follows:

> No attempt has been made to segregate the work performed and the amount of attorneys' fees attributed to Peachteee and King's declaratory judgment action and that attributed to Rapids counterclaims against Peachtree either in the underlying time and expense reports or in Mr. Hancock's affidavit as to Rapids counterclaims for tortious interference with existing business relationships, misappropriatation of Rapid's information, and request for exemplary damages and attorneys' fees. . . . Mr. Hancock's billing records and affidavit are insufficient to determine the number of hours reasonably spent in prosecuting the declaratory judgment suits.

10

Texas law prohibits recovery of attorney's fees unless authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). If any attorney's fees relate soley to claims for which fees are not recoverable, a claimant must segregate recoverable from unrecoverable fees. *Id.* at 313. "Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14. Because unsegregated fees are some evidence of what the segregated amount should be, remand for segregation of fees may be required when at least some of the fees at issue are attributable to claims for which attorney's fees are recoverable. *Id.*

In its final judgment the trial court stated "The Court found that the attorneys' fees presented as summary judgment evidence are reasonable and necessary, are supported by the evidence, and that they need not be segregated, as all claims are recoverable and, even if they are not, all legal services advanced both recoverable and nonrecoverable claims, and such claims were intertwined, as argued." However, Craddock's affidavit controverts this statement by the trial court. At the least, his affidavit creates a fact issue regarding segregation of fees. Accordingly, we sustain Rapid's segregation complaint, and reverse and remand to the trial court for further proceedings.

## B. Temporary Injunction – Appellate Cause No. 14-10-00902-CV

In this appeal, Rapid and RSL Funding contend that (1) the trial court abused its discretion in entering the August 24, 2010 temporary injunction, (2) the trial court lacked jurisdiction to enter a temporary injunction after its plenary power had expired, (3) the trial court lacked jurisdiction to enjoin RLS Funding because it had not yet been served in the underlying lawsuit, (4) the trial court abused its discretion by entering a temporary injunction that was overbroad and went beyond what was necessary to preserve the status quo, and (5) the trial court abused its discretion in finding that there was a probable right to relief on Peachtree's claim for tortious interference with an existing contract.

11

### 1. Standard of Review

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (subst. op.); *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993) (per curiam). Temporary injunctions are an extraordinary remedy and do not issue as a matter of right. *Butnaru*, 84 S.W.3d at 204; *Walling*, 863 S.W.2d at 57. To obtain a temporary injunction, the applicant must plead and prove the following three elements: (1) a cause of action against the adverse party; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204. Irreparable injuries are those for which the injured party cannot be adequately compensated by damages or for which damages cannot be measured by a pecuniary standard. *Id.*

Whether to grant or deny a temporary injunction lies within the trial court's sound discretion. *Id.* (citing *Walling*, 863 S.W.2d at 58 and *State v. Walker*, 679 S.W.2d 484, 485 (Tex.1984)). We should reverse an order granting injunctive relief only if the trial court abused its discretion. *Id.* We must not substitute our judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Id.* (citing *Johnson v. Fourth Ct. of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985) and *Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex. 1978)). Finally, a temporary injunction is not a trial on the merits, and we may not review the merits of the underlying litigation on appeal from a temporary injunction order. *See 8100 N. Freeway Ltd. v. City of Houston*, 329 S.W.3d 858, 864–65 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Here, because Rapid and RSL Funding have challenged the trial court's jurisdiction, we address those issues first.

### 2. Jurisdiction to Enter the Temporary Injunction

In their first and second issues Rapid and RSL Funding contend that the trial court lacked jurisdiction to enter the temporary injunction because the judgment it signed in the King matter was final months before the temporary injunction was entered. A panel of

this court has already determined that the trial court retained jurisdiction in this matter. *See In re RSL Funding, LLC*, No. 14-10-01111-CV, 2010 WL 4685385, at *3 (Tex. App.—Houston [14th Dist.] Nov. 18, 2010, orig. proceeding).  Because we are of the opinion that the trial court retained jurisdiction over cause number 2006-23366 after it signed the King summary judgment, we overrule Rapid and RSL Funding's first two issues.

### 3.  Jurisdiction over RSL Funding

In their third issue, Rapid and RSL Funding complain that the trial court never obtained jurisdiction over RSL Funding because it was not served with the amended petition in this case until after the temporary injunction hearing was held and injunctive relief was granted.  RSL Funding did not appear at the hearing either in person or through counsel, although the agent for RSL Funding is Stewart Feldman, who is a principal of the law firm representing Rapid.

"No temporary injunction shall be issued without *notice* to the adverse party." Tex. R. Civ. P. 681 (emphasis added).  Here, the certificate of service attached to the plaintiffs' first supplemental petition states that it was forwarded to counsel of record in accordance with the Texas Rules of Civil Procedure on August 13, 2010.  It specifically notes that it was sent to John Craddock at the Feldman Law Firm LLP "for Rapid" and to Stewart Feldman of the Feldman Law Firm LLP "for RSL" via facsimile.  The Notice of Hearing similarly recites that it was faxed to Rapid and to RSL Funding on August 13, 2010.  Although a trial on a petition for a permanent injunction requires citation to be served and returned as ordinary citations, such a process is not necessary on an application for a temporary injunction.  *Long v. State*, 423 S.W.2d 604, 605 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.).  An application for a temporary injunction may be heard "at such time and upon such reasonable notice given in such manner as the court may direct."  Tex. R. Civ. P. 686.

We conclude that because reasonable notice was provided to RSL Funding, the trial court had jurisdiction over it.  Nothing in our record indicates that RSL Funding was

13

surprised by the hearing on the temporary injunction; it asked for neither a continuance nor a postponement. *Cf. Long*, 423 S.W.2d at 606 (concluding that when a defendant has notice of a hearing on temporary injunction, he must seek a continuance or a postponement because he needs time to prepare to answer or defend against the pleading before he may be heard to complain on appeal). We thus overrule Rapid and RSL Funding's third issue.

### 4. Scope of the Temporary Injunction

Rapid and RSL Funding complain about the scope of the temporary injunction entered by the trial court in their fourth and fifth issues. They asserts that the trial court abused its discretion (a) by entering a temporary injunction that went beyond simply preserving the status quo and (b) finding that Peachtree established a probable right to relief on its tortious interference claim.

The temporary injunction issued by the trial court provides as follows:

> On this day came to be heard the Application for Temporary Injunction filed by Settlement Funding, LLC ("Peachtree"). After consideration of the Application, the evidence presented, controlling law, the arguments of counsel, and judicial notice with respect to matters presently before this Court involving RSL Funding, LLC and Rapid Settlements Limited ("RSL"), the Court finds that Peachtree pleaded a cause of action for which there is a probable right to relief, that there is evidence that harm is imminent to Peachtree, that Peachtree has no adequate remedy at law, and that a temporary injunction is necessary, proper, and supported by the evidence and law. The Court further finds that the failure to enter a temporary injunction at this time would cause irreparable injury to Peachtree and that Peachtree has no adequate legal remedy. The Application should therefore be GRANTED.
>
> IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that:
>
> 1. Peachtree pleaded a cause of action for tortious interference with existing contracts and established a probable right to relief therefrom.
> 2. RSL's interference with Peachtree's contracts has caused and will continue to cause irreparable injury if RSL and/or its agents are not

14

enjoined from interfering with Parenti and from interfering with Peachtree's other agreements. There is no adequate legal remedy.

3. RSL and/or its agents shall not interfere with Peachtree's contracts, including but not limited to the case of *In re: Transfer of Structured Settlement Payment Rights by Michale M. Parenti*; Cause No. 2009-46111 in the District Court of Harris County, Texas, 157th Judicial District. RSL and/or its agents shall not search court filings to find structured settlement agreements with Peachtree that are pending approval and shall not approach any of Peachtree's existing customers or enter into any agreements with them.

4. RSL received reasonable notice by facsimile and certified mail of the hearing on Peachtree's Application. No service of citation upon RSL was required because Peachtree's Application was for a temporary injunction. See TRCP 686.

5. This temporary injunction shall remain in effect until there is a trial on the merits. The case is hereby set for a trial on the merits for the Court's docket of October 25, 2010, beginning at 9:00 a.m. in the 113th Judicial District Court.

6. Peachtree has already posted a bond in the amount of $500, and the Court finds that no additional bond is required.

Rapid and RSL Funding assert that the trial court abused its discretion by enjoining them from entering into any agreements with Peachtree's existing customers. They further note that the order is without geographical limits and thus covers the entire United States. They also contend that the temporary injunction goes far beyond simply preserving the status quo of the underlying dispute because it prohibits Rapid and RSL Funding from entering into agreements with Peachtree's clients even if the client contacts them.

We agree that this temporary injunction goes beyond simply preserving the status quo pending a trial on the merits. *See Butnaru*, 89 S.W.3d at 204. As written, neither Rapid nor RSL Funding may interact with any of Peachtree's clients, anywhere in the United States (or anywhere else, for that matter), even if a Peachtree client contacts Rapid or RSL Funding seeking a better offer than that offered by Peachtree. This language results in an unreasonable restraint on trade. *Cf.* Tex. Bus. & Comm. Code Ann. § 15.05 (discussing unlawful restraints on trade) (West 2011). Accordingly, we sustain Rapid

and RSL Funding's fourth issue. Because the trial court is in a better position to determine appropriate geographic limitations and whether Rapid and RSL Funding may enter into agreements with Peachtree's clients when they have not initiated the contact, we reverse and remand to the trial court for further proceedings.

## CONCLUSION

Having determined that Rapid raised a fact issue regarding fee segregation, in our cause number 14-10-00630-CV, Trial Court Cause No. 2006-23366B, we reverse and remand to the trial court for a new trial on attorney's fees. Additionally, because we conclude that the trial court's temporary injunction is overbroad, we reverse and remand for proceedings consistent with this opinion in our cause number 14-10-00902-CV, Trial Court Cause No. 2006-23366.

/s/     Adele Hedges
Chief Justice

Panel consists of Chief Justice Hedges and Justices Boyce and Christopher.