

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00186-CV

———————————————

KENNETH W. SCROGGINS AND DALLAS LITE & BARRICADE, INC.,
Appellants

V.

BUYERS BARRICADES, INC., Appellee

---

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-332979-22

---

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

In this interlocutory appeal, Appellant Kenneth W. Scroggins complains that the trial court erred by entering a temporary injunction enjoining him from violating certain terms of the "Employee Confidentiality, Non-Competition, and Non-Solicitation Agreement" (Agreement) he had entered into with his former employer, Appellee Buyers Barricades, Inc. (Buyers). *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4). Because portions of the injunction order are vague or unspecified, we will reverse those portions and remand the case to the trial court for further proceedings. *See* Tex. R. App. P. 43.2.

## I. BACKGROUND

### A. PRE-SUIT FACTS

Before joining Buyers, Scroggins worked as a salesperson for Striping Services and Supply (SSS), a company that provides traffic control products and services in the Dallas-Fort Worth Metroplex. Scroggins focused his sales efforts on large, public-sector road projects.

In May 2020, Scroggins went to work as an at-will salesperson for Buyers and brought with him a book of business from SSS. Buyers provides substantially the same products and services as SSS, albeit on a larger scale. Upon beginning his job at Buyers, Scroggins signed the Agreement which included the following noncompetition, nonsolicitation, and confidentiality provisions:

[1].  In consideration of my employment rights under this Agreement and in recognition of the fact that I will have access to the confidential information of [Buyers] and that [Buyers's] relationships with its customers and potential customers constitutes a substantial part of [Buyer's] goodwill, I hereby agree that for a period of eighteen (18) months from and after the termination of my employment, for any reason, unless acting with [Buyers's] express prior written consent, I shall not, directly or indirectly, in any capacity, solicit or accept business from, provide consulting services of any kind to, or perform any of the services offered by [Buyers], for any of [Buyers's] customers or prospective customers with whom [Buyers] had business dealings in the year preceding the termination of my employment.

. . . .

[2].  In consideration of my employment rights under this Agreement and in recognition of the fact that I will have access to confidential information of [Buyers's], I hereby agree that I shall not for a period of eighteen (18) months from and after the termination of my employment with [Buyers], whether by resignation, termination for cause, or for any other reason, and within the one hundred (100) mile radii of the greater Dallas/Fort Worth metroplex area engage in any business or perform any service, directly or indirectly, in the traffic control sales business . . . .

[3].  I hereby represent to [Buyers] that enforcement of the restrictions contained in [the above provisions] would not be unduly burdensome to me . . . .

[4].  **Unauthorized Disclosure of Confidential Information.**  While employed by [Buyers] and thereafter, I shall not, directly or indirectly, disclose to anyone outside of [Buyers] any Confidential Information or use any Confidential Information (as hereinafter defined) other than pursuant to my employment by and for the benefit of [Buyers].  The term "Confidential Information" as used throughout this Agreement means any and all trade secrets and any and all data or information not generally known outside of [Buyers] whether prepared or developed by or for [Buyers] or received by [Buyers] from any outside source. Without limiting the scope of this definition, Confidential Information includes: any customer files, customer lists, any business, marketing, financial or sales record, data, electronic data, program, plan, or survey; and any other record or information relating to the present or future

3

business, product, or service of [Buyers]. All Confidential Information and copies therefor are the sole property of the Company.

Notwithstanding the foregoing, the term Confidential Information shall not apply to information that [Buyers] has voluntarily disclosed to the public without restriction, or which has otherwise lawfully entered the public domain.

In February 2022, Scroggins resigned from Buyers and soon started working as a salesperson at Dallas Lite & Barricade, Inc. (Dallas Lite), a direct competitor of Buyers.

### B. BUYERS SUES AND APPLIES FOR INJUNCTIVE RELIEF

In April 2022, Buyers sued Scroggins and Dallas Lite under various breach-of-contract, tortious-interference, and misappropriation-of-trade-secrets causes of action. Generally, Buyers alleged that Scroggins—in concert with Dallas Lite—was actively breaching the Agreement by directly competing against Buyers, soliciting its customers, and using its confidential information. Buyers also sought temporary and permanent injunctions to enjoin Scroggins and Dallas Lite from continuing to violate the Agreement.

#### 1. Temporary Injunction Hearing

##### a. Scroggins's Testimony

At a hearing on Buyers's temporary injunction, Scroggins testified that he signed the Agreement as a condition of his initial employment and that, in doing so, he had agreed to all of its terms. He explained that he had developed close relationships with a small number of customers in the heavy-traffic-barricading

4

industry while at SSS and that he had brought those relationships with him to Buyers. Scroggins said that Buyers hired him mainly because of these relationships and that he had worked exclusively with those few customers during his time at Buyers. In fact, Scroggins did not have a sales territory like all of the other salespeople at Buyers because he was tasked with focusing only on this set list of customers.

All of the salespeople at Buyers, including Scroggins, were emailed weekly customer lead sheets and each other's top customers. In addition, all salespeople collectively attended a weekly sales meeting with management at which they discussed their weekly sales efforts. Scroggins said that the relationships with his customers were cultivated while he worked at Buyers because he was able to offer them more services than when he had worked at SSS and because Buyers purchased appreciation gifts for the customers. However, Scroggins maintained that he was never given any of Buyers's confidential information and that he did not take any confidential information with him to his job at Dallas Lite.

Scroggins stated that his work at Dallas Lite was the same work that he performed at Buyers. He admitted that, soon after leaving Buyers, he contacted on behalf of Dallas Lite at least two of his established customers that he had worked with at Buyers in the preceding year. He also acknowledged that he had contacted other customers that he knew were Buyers's customers but with whom he had not previously worked. Due to the nature of the barricade business, Scroggins explained

that most customers have relationships with and "purchase from almost every barricade company" in the industry.

Pointedly, Scroggins was asked if he would solicit Buyers's customers in the absence of an injunction against doing so:

Q. Now, if the court does not enter a temporary injunction in this case, you'll continue to solicit Buyers's customers on behalf of Dallas Lite & Barricade, won't you?

A. I will be soliciting Dallas Lite & Barricade current customers.

Q. Regardless of whether those customers happen to be customers who were customers of Buyers during the one-year period before you resigned from Buyers, correct?

A. Correct.

### b. Tony Troxclair's Testimony

Tony Troxclair, director of sales at Buyers, testified that Buyers does business primarily in north Texas with smaller branches in San Antonio and Houston. He stated that Dallas Lite is one of Buyers's largest competitors and that the two companies compete for the same customers. Troxclair said that Buyers supplied Scroggins with confidential information through the weekly sales lead reports and meetings, which included data about sales volume and customer contacts. The reports informed the salespeople about current and future projects so that they could "get in front of the jobs early on, to be the first to a particular site, to try to get in the door" with their customers. Also, by having knowledge of Buyers's largest-volume

6

customers, its salespeople could focus on those relationships to continue to grow them.

Troxclair testified that the salespeople had access to a shared computer drive that contained information about project bids and plans. He characterized this information as a confidential trade secret that, if divulged, could be used by competitors to gain an advantage when drafting their future bids. Additionally, Scroggins had access to Buyers's password-protected TCR system that was used "to generate all of [Buyers's] jobs and tickets for [its] customers" and contained information such as sales volume, price points, and special pricing related to particular customers. According to Troxclair, this information could be used by a competitor to undercut Buyers's pricing and customer relationships.

### c. Steve Lappa's Testimony

Steve Lappa, a director consultant at Buyers, testified that he provided Scroggins with information about Buyers's price points and margins on certain jobs. He considered this information confidential and stated that it would be valuable to competitors. According to Lappa, Scroggins became Buyers's leading salesperson by volume of sales due in large part to the confidential information and the "bigger platform" provided to him by Buyers. And while Buyers had already done business with all of the customers Scroggins had "brought" over from SSS, Lappa was "absolutely certain" that Scroggins had helped Buyers increase those relationships.

## 2. Trial Court Enters Temporary Injunction

The trial court entered a temporary injunction order (Order) which included, among others, the following findings:

- that Scroggins "has accompanied [Dallas Light] sales employees to solicit Buyers'[s] customers on behalf of [Dallas Light]";

- that "during his employment at Buyers, Scroggins had access to confidential information about Buyers'[s] business operations and customers, and that Scroggins is now in a position to use Buyers'[s] confidential information to compete unfairly against Buyers and to assist [Dallas Lite] in competing unfairly against Buyers";

- that "Scroggins has violated and continues to violate the [Agreement]";

- that "such actions are causing immediate and irreparable injury to Buyers by destroying Buyers'[s] goodwill and reputation, and is continuing, or may continue, to cause Buyers continued damage and loss to its business for which monetary damages are not readily calculable"; and

- that "Buyers has demonstrated a probable right to the relief requested . . . ."

Accordingly, the Order enjoined Scroggins from "soliciting, diverting, taking away, or attempting to take away from Buyers any customer listed on Exhibit A." Both Scroggins and Dallas Lite were enjoined from "possessing, using, or disclosing Buyers'[s] confidential information or trade secrets that Scroggins acquired or gained access to because of his employment at Buyers." There was no Exhibit A attached to the Order and it did not define confidential information.

8

## II. DISCUSSION

Scroggins raises five issues on appeal: that (1) the Order lacks specificity because it does not attach an Exhibit A defining which customers Scroggins is enjoined from soliciting; (2) the Order lacks adequate specificity because it fails to adequately define what constitutes confidential information; (3) the trial court abused its discretion by entering the Order because the evidence did not reasonably support a determination of the existence of Buyers's probable right to relief; (4) the Order, if it enjoins solicitation of all of Buyers's customers from the preceding one-year period, is overbroad in that it should not include customers with whom Scroggins had a pre-existing relationship; and (5) the Order is overbroad to the extent that it enjoins Scroggins from soliciting customers with whom he had no business contact while employed by Buyers.

Because we agree that the Order lacks the requisite specificity as to issues one and two, we will sustain those issues and remand the case for further proceedings on those issues only. We will overrule issues three, four, and five and leave the remainder of the Order intact.

### A. STANDARD AND SCOPE OF REVIEW

"A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020) (quoting *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). Such an injunction functions "to preserve the status quo of the litigation's

9

subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g) (citing *Walling*, 863 S.W.2d at 57). "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id.*

The trial court exercises its sound discretion in deciding whether to issue a temporary injunction, and we may reverse that decision only if we conclude that the trial court abused its discretion because its actions were "so arbitrary that [they] exceeded the bounds of reasonable discretion." *Id.* Our abuse-of-discretion review requires that we "view the evidence in the light most favorable to the trial court's order [and that we indulge] every reasonable inference in its favor." *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 196 (Tex. App.—Fort Worth 2005, no pet.). Thus, if the trial court must resolve a conflict in the evidence, its resolution of a fact issue is one to which we must defer. *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 292 (Tex. App.—Beaumont 2004, no pet.). However, we review the trial court's application of the law to established facts and the resolution of pure legal questions de novo. *Jelinis, LLC v. Hiran*, 557 S.W.3d 159, 165 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *Tom James of Dall., Inc. v. Cobb*, 109 S.W.3d 877, 883 (Tex. App.—Dallas 2003, no pet.). Also, "[w]hen the trial court embeds findings of fact and conclusions of law in its order denying a temporary injunction, the findings and conclusions may be helpful in determining whether the trial court exercised its

discretion in a principled fashion[;] however, they are not binding on this court." *Communicon, Ltd. v. Guy Brown Fire & Safety, Inc.*, No. 02-17-00330-CV, 2018 WL 1414837, at *6 (Tex. App.—Fort Worth Mar. 22, 2018, no pet.) (mem. op.).

Because the temporary injunction only preserves the status quo pending final trial, the trial court's determination regarding whether to issue the temporary injunction does not resolve the ultimate merits of the suit. *Brooks v. Expo Chem. Co.*, 576 S.W.2d 369, 370 (Tex. 1979). The assumption is that the evidence may well change between the preliminary temporary-injunction stage of the proceeding and a final trial on the merits. *Burgess v. Denton Cnty.*, 359 S.W.3d 351, 359 n.35 (Tex. App.—Fort Worth 2012, no pet.) (citing *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978)). Thus, the probability-of-success requirement does not require an applicant to show that it will prevail at final trial. *Kim v. Oh*, No. 05-19-00947-CV, 2020 WL 2315854, at *2 (Tex. App.—Dallas May 11, 2020, no pet.) (mem. op.). Instead, the applicant must only "produce some evidence supporting every element of at least one valid legal theory." *Id.*

### B. Probable Right to Relief

We will first consider Scroggins's third issue because, if the evidence did not support the trial court's determination that Buyers established a probable right to relief, the entire basis for the temporary injunction would be undermined. *See Hernandez v. Combined Ins. Co. of Am.*, No. 02-20-00225-CV, 2021 WL 520456, at *8 (Tex. App.—Fort Worth Feb. 11, 2021, pet. denied) (mem. op.).

11

Scroggins attacks only the trial court's determination as to the second element required for temporary injunctions, contending that Buyers failed to show a probable right to relief because the Agreement's noncompete and nonsolicitation provisions[1] were not ancillary to an otherwise enforceable agreement as required by section 15.50 of the Texas Business and Commerce Code (the Act). This is true, says Scroggins, because Buyers never supplied Scroggins with confidential information as promised in the Agreement.[2] If true, this would render the confidentiality agreement illusory and, thus, unable to serve as an ancillary agreement capable of supporting the noncompete and nonsolicitation agreements. And without enforceable noncompete, nonsolicitation, and confidentiality provisions, Buyers would be unable to show a probable right to relief on any of its causes of action because each cause relies on the enforceability of at least one of those provisions.

---

[1]While Scroggins explicitly refers only to the enforceability of the Agreement's noncompete provision, we will liberally construe Scroggins's argument to also include the nonsolicitation agreement. *See Shoreline Gas, Inc. v. McGaughey*, No. 13-07-364-CV, 2008 WL 1747624, at *10 (Tex. App.—Corpus Christi–Edinburg Apr. 17, 2008, no pet.) (mem. op.) ("A non-solicitation agreement is sufficiently analogous to a covenant not to compete such that provisions of the Act must apply fully to such agreement."); *see also Hernandez*, 2021 WL 520456, at *8 (same).

[2]Scroggins does not dispute that Buyers made such a promise in the Agreement. Regardless, it is well established that "[w]hen the nature of the work the employee is hired to perform requires confidential information to be provided for the work to be performed by the employee, the employer impliedly promises confidential information will be provided." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009).

12

### 1. Ancillary Agreement Required

> A noncompete or nonsolicitation agreement is enforceable only if it is
>
> ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographic area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. Bus. & Com. Code Ann. § 15.50; *see Hernandez*, 2021 WL 520456, at *8 (applying the requirements of the Act to nonsolicitation agreements). The promise and ultimate provision of confidential information sufficiently "satisfies the statutory nexus" required to establish the existence of an ancillary agreement under the Act. *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 775 (Tex. 2011); *see Mann Frankfort*, 289 S.W.3d at 850; *see also Shoreline Gas*, 2008 WL 1747624 at *8 (holding that a unilateral confidentiality agreement became an enforceable ancillary agreement "as soon as the employer provided confidential information to the employee") (citing *Alex Sheshunoff Mgmt. Services, L.P. v. Johnson*, 209 S.W.3d 644, 657 (Tex. 2006)).

### 2. Evidence Existed That Scroggins was Given Confidential Information

Thus, though we are to draw no conclusions as to the ultimate merits of Buyers's causes of action, we must determine whether, in the light most favorable to the Order and indulging every inference in its favor, there was at least some evidence supporting the trial court's determination that Buyers supplied Scroggins with confidential information. We hold that such evidence existed.

The Agreement defined confidential information to include "any customer files, customer lists, any business, marketing, financial or sales record, data, electronic data, program, plan, or survey; and any other record or information relating to the present or future business, product, or service of [Buyers]." Though Scroggins contends that he was never supplied with confidential information, Troxclair and Lappa testified that Buyers supplied Scroggins with the following information via its weekly sales reports and meetings, its shared drive and TCR system, and other personal communication:

- Sales leads and sales volume for individual customers and delineating Buyers's top customers;

- Information about customers' current and future projects;

- Project bid and plan information;

- Price points and special pricing for particular customers; and

- Buyers's margins for certain projects.

Viewed in the light most favorable to the Order and deferring to the trial court's discretion in resolving conflicting evidence, we conclude that this constitutes at least some evidence to support the trial court's determination that Buyers supplied Scroggins with confidential information as contemplated by the Agreement. It follows, then, that the confidentiality agreement was an otherwise enforceable, ancillary agreement to support both the noncompete and nonsolicitation provisions pursuant to the Act. *See* Tex. Bus. & Com. Code Ann. § 15.50. Accordingly, the trial

14

court did not err in concluding that Buyers showed a probable right to recovery, and we overrule Scroggins's third issue.

### C. Vague or Overbroad Provisions

In his remaining issues, Scroggins contends that certain provisions of the Order are vague or overbroad related to which customers Scroggins was enjoined from soliciting and what constituted the confidential information that he and Dallas Lite were enjoined from using.

A trial court abuses its discretion by issuing a temporary-injunction order that does not comply with the substantive requirements for such an order or that is overly broad or vague. *See Bellefeuille v. Equine Sports Med. & Surgery, Weatherford Div., PLLC,* No. 02-15-00268-CV, 2016 WL 1163364, at *3 (Tex. App.—Fort Worth Mar. 24, 2016, no pet.) (mem. op.); *Fuqua v. Oncor Elec. Delivery Co.*, 315 S.W.3d 552, 557 (Tex. App.—Eastland 2010, pet. denied); *see also* Tex. R. Civ. P. 683. An injunction order must "be specific in terms [and] shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained . . . ." Tex. R. Civ. P. 683; s*ee San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 702 (Tex. 1956). This is balanced with the practicality that an injunction "must be in broad enough terms to prevent repetition of the evil sought to be stopped." *Guardian Abstract & Title Co.*, 291 S.W.2d at 702.

### 1. What customers is Scroggins enjoined from soliciting?

The Order enjoins Scroggins from soliciting any of Buyers's customers "listed on Exhibit A" but does not include an Exhibit A. Scroggins argues that this makes the Order impermissibly vague regarding which customers Scroggins is enjoined from soliciting.[3] Buyers concedes this issue and requests that we remand the Order for clarification about which customers should be included in Exhibit A.

An injunction order does not violate Rule 683 merely because it references documents that are attached and incorporated into the order, *Layton v. Ball*, 396 S.W.3d 747, 753 (Tex. App.—Tyler 2013, no pet.), or by failing to identify a specific list of customers that a person is enjoined from soliciting, *Lockhart v. McCurley*, No. 10-09-00240-CV, 2010 WL 966029, at *4 (Tex. App.—Waco Mar. 10, 2010, no pet.) (mem. op.). The Order here, however, neither attaches the referenced Exhibit A nor provides any other direction for Scroggins to know which customers he is enjoined from soliciting.

For these reasons, we hold that this portion of the Order is impermissibly vague or unspecified and that the trial court abused its discretion. We reverse this portion of the Order and remand the case to the trial court for further proceedings on

---

[3]Scroggins filed with the trial court a motion for clarification on what the trial court intended to be included in Exhibit A, but that motion was never ruled on.

this issue.[4] *See Rapid Settlements, Ltd. v. Settlement Funding, LLC,* 358 S.W.3d 777, 790 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (reversing portions of an overbroad temporary injunction and remanding to the trial court because "the trial court [was] in a better position" to make the relevant factual determinations needed to cure its error); *Webb v. Glenbrook Owners Ass'n, Inc.*, 298 S.W.3d 374, 392 (Tex. App.—Dallas 2009, no pet.) (reversing portions of a vague injunction order and remanding to the trial court for correction).

## 2. What confidential information are Scroggins and Dallas Lite enjoined from using?

Finally, in his second issue Scroggins argues that the Order is impermissibly vague because it does not adequately define what constitutes the confidential information that he and Dallas Lite are enjoined from using. Buyers does not address this issue in its response brief. We agree with Scroggins.

Orders that prohibit the disclosure and use of confidential information violate Rule 683 when they do not specifically define what constitutes the information sought to be protected. *Ramirez v. Ignite Holdings, Ltd.*, No. 05-12-01024-CV, 2013 WL 4568365, at *5 (Tex. App.—Dallas Aug. 26, 2013, no pet.) (mem. op.); *Wimbrey v. WorldVentures Mktg., LLC*, No. 05-19-01520-CV, 2020 WL 7396007, at *6 (Tex. App.—Dallas Dec. 17, 2020, no pet.) (mem. op.)

---

[4]Having reversed and remanded on issue one for the trial court to more specifically identify which customers are included in the Order, we overrule Scroggins's fourth and fifth issues as not ripe for consideration.

The Order is impermissibly vague because it provides no definition of what constitutes confidential information. This is an abuse of discretion. Accordingly, we reverse this portion of the Order and remand the case to the trial court for further proceedings on this issue. *See Rapid Settlements, Ltd.*, 358 S.W.3d at 790.

## III. CONCLUSION

Because we conclude that the Order is impermissibly vague or unspecified as to issues one and two, we sustain these issues, reverse these portions of the Order, and remand to the trial court for further proceedings on these issues. We affirm the Order in all other respects. *See* Tex. R. App. P. 43.2(a), (d).

/s/ Brian Walker

Brian Walker
Justice

Delivered: October 13, 2022