George CARROW, et ux., Appellants,

v.

BAYLINER MARINE CORPORATION, et al., Appellees.

No. 3–88–262–CV.

Court of Appeals of Texas, Austin.

Nov. 29, 1989.

Rehearing Denied Jan. 10, 1990.

Don Busby, Busby & Associates, P.C., Temple, for appellants.

David F. Bragg, Michael Curry, Bragg, Chumlea, McQuality, Smithers & Curry, Austin, for Bayliner Marine Corp.

John R. Francis, Temple, for Aqualand, Inc.

Before SHANNON, C.J., and GAMMAGE and JONES, JJ.

JONES, Justice.

This is a Deceptive Trade Practices Act (DTPA) suit brought by appellants, George Carrow and Joan Carrow, against appellees, Bayliner Marine Corporation (Bayliner) and Aqualand, Inc. (Aqualand), for misrepresentations and unconscionable actions surrounding the sale of a motoryacht. The jury rendered a verdict for the Carrows against Bayliner and Aqualand, but found no damages against Aqualand. On that basis, the trial court rendered a take-nothing judgment as to the Carrows' claim against Aqualand. The trial court disregarded three of six damage findings against Bayliner and entered judgment on the remaining damage issues against Bayliner. The Carrows perfected this appeal. We will reverse the trial court's judgment n.o.v. disregarding the damage issues and render judgment against Bayliner on these issues, and will affirm the remainder of the judgment.

In four points of error the Carrows assert that the trial court erred in (1) disregarding the damage issues, (2) submitting a jury issue on acceptance, (3) not rescinding the contract, and (4) rendering a take-nothing judgment as to Aqualand.

The Carrows' problems began in August 1985 when they purchased from Aqualand, a boat retailer, a 38–foot motoryacht manufactured by Bayliner. Several months after the purchase agreement was entered into, Bayliner delivered the boat to Aqualand, which in turn delivered it to the Carrows. Almost immediately the Carrows began to notice flaws in the boat. During their first month of possession, they compiled a 63–item list of defects. In response to this list, Aqualand made numerous repairs but was not able to repair the boat to the Carrows' satisfaction. Despite their early negative reactions and knowledge of defects, the Carrows authorized their bank to release the funds for the purchase of the

boat. They subsequently made about five overnight trips on the boat.

Later, the Carrows prepared an 83–item complaint list, which was delivered, along with a demand letter, to Aqualand and Bayliner. In response to this list, Bayliner sent a representative from Seattle to Austin to inspect and work on the boat. He worked on the boat for eleven days but still was not able to fix it to the Carrows' satisfaction. Thereafter, the Carrows filed this suit against Aqualand and Bayliner seeking damages and rescission.

The case was tried to a jury, which found, among other things, that (1) the Carrows paid $131,142.24 for the motoryacht, (2) Bayliner had committed deceptive trade practices, (3) both Bayliner and Aqualand had committed unconscionable practices, (4) the motoryacht was not merchantable, (5) the Carrows accepted the boat after discovery of its defects, (6) the actions of Bayliner caused the Carrows $17,405 in repair damages, (7) no repair damages had been caused by Aqualand, and (8) the Carrows' reasonable attorneys' fees were $31,500 through all appellate stages. The jury did not find that either Bayliner or Aqualand engaged in misconduct "knowingly."

The trial court granted, in part, Bayliner's motion for judgment n.o.v., disregarding $13,575 of the damages found by the jury on the ground that these damages were not supported by the evidence. The trial court rendered judgment for the Carrows against Bayliner for $3,830 plus $2,000 additional statutory damages and prejudgment interest for a total of $6,425.35 plus attorney's fees. The court refused the Carrows' request for rescission. Finally, the trial court rendered a take-nothing judgment as to Aqualand.

In their first point of error the Carrows attack the portion of the trial court's judgment that disregarded certain damage issues answered by the jury. The jury found the following costs to repair the defects in the Carrows' motoryacht:

| | |
|---|---|
| Completed Repairs | $1,630 |
| Headliner | 2,875 |
| Hull | 5,700 |
| Salon Table | 1,800 |
| Electrical System | 5,000 |
| Trim Tabs | 400 |

After the jury returned its verdict, Bayliner moved for judgment n.o.v. and for the court to disregard these damage amounts on the grounds that there was, first, no evidence that the repairs were reasonable and, second, no evidence to support the amount of damages. The trial court agreed with Bayliner in part and disregarded the jury answers as to the headliner, hull, and electrical system. The trial court's judgment states that the jury answers were disregarded because there was insufficient evidence to support the jury answers.

■ Initially, we note that a trial court may not grant judgment n.o.v. or disregard a jury finding based upon the factual insufficiency of the evidence; such motion may be granted and judgment rendered only if there is no evidence to support the jury's findings. *Burt v. Lochausen*, 151 Tex. 289, 249 S.W.2d 194, 199 (1952); *Wilfin, Inc. v. Williams*, 615 S.W.2d 242 (Tex.Civ. App.1981, writ ref'd n.r.e.). In considering a "no evidence" point, the reviewing court must reject all evidence contrary to the jury's findings and consider only the facts and circumstances which tend to support those findings. *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1950).

■ In order to recover actual damages for repair costs under the DTPA, the traditional rule is that the injured party must show that the repairs are necessary and the cost of repairs is reasonable. *GATX Tank Erection Corp. v. Tesoro Petroleum Corp.*, 693 S.W.2d 617 (Tex.App.1985, writ ref'd n.r.e.). This traditional rule has recently been questioned, and there is some indication that the DTPA may not require proof of necessity and reasonableness. *See Jacobs v. Danny Darby Real Estate, Inc.*, 750 S.W.2d 174, 176 (Tex.1988). However, as in the majority opinion in *Jacobs*, we need not discuss whether the DTPA requires proof of reasonable and necessary cost of repairs, because we conclude that in the present case there is some evidence of reasonableness and necessity as to the re-

pairs of each of the listed items. *See Corum Management v. Aguayo Enterprises*, 755 S.W.2d 895 (Tex.App.1988, writ denied).

In order to establish that repairs are necessary and reasonable, the magic words "reasonable" and "necessary" need not be used; the injured party need only present sufficient competent testimony so that the trier of fact is justified in concluding that the repairs are necessary and that the cost of repair is reasonable. *Jacobs*, 750 S.W.2d 174; *Liptak v. Pensabene*, 736 S.W.2d 953, 958 (Tex.App.1987, no writ). The Carrows' expert witness, Eric Mitchell, testified to his estimate of what it would cost to repair the motoryacht and make it function properly. Therefore, we must examine Mitchell's testimony to see if he testified to sufficient facts and circumstances to allow the jury to conclude that the repairs are necessary and that the estimated cost of these repairs is reasonable.

Mitchell's qualifications as an expert in boat repairs were not challenged by the appellees. He testified that his estimate was based on his expert opinion. Bayliner argues that since the testimony as to cost of repair was in the form of an estimate of future repairs, a greater showing of reasonableness is required. *See Jordan Ford, Inc. v. Alsbury*, 625 S.W.2d 1 (Tex.Civ.App. 1981, no writ) ("Testimony that is no more than a recital of a repair estimate and which further states nothing with regard to reasonableness and necessity, is no evidence of any damages amount."). However, *Jordan* and the cases cited therein are distinguishable because in each of those cases the expert who had made the estimate did not testify at all. When the expert who prepared the estimate of repairs does not testify, the jury has no basis on which to evaluate the estimate. Even when the estimator does testify, the testimony may be so lacking in substantiation as to be no evidence of reasonableness and necessity. However, we conclude that as to each of the contested damage issues Mitchell provided sufficient facts underlying his opinion to allow the jury to evaluate the reasonableness and necessity of the repairs.

Mitchell testified that the existing headliner was not properly installed, that it looked messy, and that fuzz was hanging down. He also testified that in order to repair the headliner, the existing headliner would have to be replaced because it had become detached from the ceiling and had stretched to such a point that it could not be properly reinstalled. This testimony presents some basis for Mitchell's conclusions and is at least some evidence of the necessity of replacement as a method of repair. Furthermore, Mitchell testified that in his opinion it would cost $5,737.50 to repair the headliner. This was an objective estimate of the amount of money that it would take to repair the boat. Since Mitchell was testifying as an expert, his objective estimate is at least some evidence from which the jury could infer that the amount represents a reasonable cost to repair the headliner.

Similarly, Mitchell testified that in order to repair the hull, the boat would have to be hauled out of the water, stored, and the patch inspected and repaired. He further testified that the entire bottom of the boat would have to be repainted because there were some places where the paint was not properly applied and because all of the paint probably was no longer effective. This testimony presents some evidence from which the jury could conclude that the repainting is necessary. Mitchell testified that it would take $5,290 to perform the repairs. As with the headliner, this estimate was again worded as an objective estimate of the cost needed to repair, from which the jury could infer reasonableness.

Finally, with regard to the electrical system, Mitchell testified that the existing generator was inadequate because it did not produce the advertised wattage. From this the jury could conclude that replacing the generator would be necessary to make the electrical system perform as advertised. Again, Mitchell gave an objective estimate of the cost to replace the generator from which the jury could conclude that the cost of repair is reasonable.

We hold that the record contains some evidence from which the reasonableness

and necessity of the repairs about which Mitchell testified could be inferred.

■ Bayliner also argues that because the dollar amounts found by the jury do not coincide with the dollar amounts to which Mitchell testified, there is no evidence to support the specific amounts found by the jury. Bayliner cites *Gulf Coast Investment Corp. v. Rothman*, 506 S.W.2d 856 (Tex.1974) and *Hindman v. Texas Lime Co.*, 157 Tex. 592, 305 S.W.2d 947 (1957). However, *Rothman* and *Hindman* did not involve no-evidence challenges. In order for a jury award of damages to withstand a no-evidence challenge there need only be some evidence that a substantial loss occurred and which affords a reasonable basis for estimating the amount of the loss (for example, the reasonable and necessary cost of repair); evidence corresponding to the precise amount found by the jury is not essential. *See McKnight v. Hill & Hill Exterminators, Inc.*, 689 S.W.2d 206, 207 (Tex.1985); *Southwest Battery Corp. v. Owen*, 131 Tex. 423, 115 S.W.2d 1097, 1099 (1938). Therefore, when a plaintiff produces sufficient evidence on which to estimate the amount of damages and there is, likewise, some evidence of reasonableness and necessity, a jury finding of an amount different from that to which the witnesses testified may not be attacked successfully by a motion to disregard or for judgment n.o.v. In this context, such judgments are proper only if there is no evidence of *any* substantial damages. Rather, the proper remedy is a motion for new trial, asserting that the damages found are "manifestly too small or too large." Tex.R.Civ.P.Ann. 320 (Supp. 1989); *see also Larson v. Cactus Utility Co.*, 730 S.W.2d 640, 641 (Tex.1987) ("If part of a damage verdict lacks sufficient evidentiary support, the proper course is to suggest a remittitur of that part of the verdict."). If a remittitur is not granted in the trial court, the defendant's remedy on appeal is a point of error asserting factual insufficiency or excessiveness of the verdict.

In the present case the trial court erred in granting Bayliner's motion for judgment n.o.v. because there is some evidence of the reasonableness and necessity of the cost of repairs and because there is some evidence of damages in general. Therefore, we sustain the Carrows' first point of error.

Bayliner has not raised in this Court a factual insufficiency cross-point. Therefore, we are precluded from considering remanding the cause or modifying the judgment on the basis that the evidence is factually insufficient to support the damage amounts found by the jury for the hull, headliner, and electrical system.

The Carrows' third point of error attacks the trial court's refusal to rescind the contract for sale of the motoryacht. The Carrows argue that since the jury found that Bayliner had engaged in false, misleading, and deceptive acts, as well as unconscionable acts, they are entitled to rescission.

When a consumer is induced by the misrepresentations of a seller to purchase goods, the DTPA provides several methods by which the consumer may "call off" the purchase. These methods are based on section 17.50(b)(3) of the DTPA, which states in part that "each consumer who prevails may obtain ... orders necessary to restore to any party of the suit any money or property, real or personal, which may have been acquired in violation of [the DTPA]." Tex.Bus. & Com.Code Ann. § 17.50(b)(3) (1987).

Section 17.50(b)(3) has been held to incorporate the Uniform Commercial Code (UCC) remedy of rescission. *Freeman Oldsmobile Mazda Co. v. Pinson*, 580 S.W.2d 112 (Tex.Civ.App.1979, writ ref'd n.r.e.). Article 2 of the UCC does not deal with "rescission" as such, but rather, it permits deserving buyers to reject the good before acceptance or to revoke acceptance in certain circumstances. Tex.Bus. & Com. Code Ann. §§ 2.602 and 2.608 (1968).

■ In response to Question 19, the jury found that the Carrows accepted the motoryacht after discovery of its defects. The Carrows have not attacked the sufficiency of the evidence to support that finding. Having accepted the boat, the Carrows had the burden to plead and prove proper revocation of acceptance under section 2.608 of

the UCC. *Freeman Oldsmobile,* 580 S.W.2d at 114. The Carrows failed to plead revocation, request the submission of a jury issue on revocation, or prove revocation as a matter of law. Accordingly, the Carrows are not entitled to revocation as a matter of law under the UCC. *See Neily v. Aaron,* 724 S.W.2d 908, 913–14 (Tex.App. 1987, no writ) (determination of the five elements of revocation is a question of fact).

However, when the consumer has been induced into the transaction by fraud, section 17.50(b)(3) has been held to be the statutory recognition of the remedy of equitable rescission and restitution. *David McDavid Pontiac, Inc. v. Nix,* 681 S.W.2d 831, 835–36 (Tex.App.1984, writ ref'd n.r. e.); *Smith v. Kinslow,* 598 S.W.2d 910, 915 (Tex.Civ.App.1980, no writ). In equity, rescission allows for the forced termination of an agreement and the restoration of benefits or consideration previously transferred. To establish a right to equitable rescission, the consumer must satisfy several requirements, which include: (1) giving timely notice to the seller that the contract is being rescinded, and (2) returning or offering to return the property received and the value of any benefit derived from its possession. *Nix,* 681 S.W.2d at 836. The party seeking rescission carries the burden of proof on these issues. *Id.* Furthermore, continued use by the buyer after obtaining knowledge of the grounds for rescission will result in a loss of any right to that remedy. *Villarreal v. Boggus Motor Co.,* 471 S.W.2d 615, 619 (Tex.Civ.App.1971, writ ref'd n.r.e.).

The Carrows did not request any jury questions on notice and tender, as required to meet their burden of showing that they are entitled to rescission, and they did not establish these issues as a matter of law. Furthermore, when there is no privity of ·contract between a buyer and a seller, there is nothing to rescind, and there is no basis for rescission or restitution. *Emmons v. Durable Mobile Homes, Inc.,* 521 S.W.2d 153, 154 (Tex.Civ.App. 1974, writ ref'd n.r.e.) (when there is no contract between the parties, there is no

action for rescission). Here, it is undisputed that the Carrows contracted with and purchased their boat from the retailer Aqualand rather than from Bayliner. In the absence of a contract between Bayliner and the Carrows there is nothing to rescind.

There is some authority that section 17.-50(b)(3) not only codifies the common law of equitable rescission and incorporates other statutes such as the UCC, but also that it is an independent ground of recovery that permits the consumer to obtain restoration of money and property. *See Smith v. Baldwin,* 611 S.W.2d 611, 616 (Tex.1980); *Woo v. Great Southwestern Acceptance Corp.,* 565 S.W.2d 290, 298 (Tex.Civ.App.1978, writ ref'd n.r.e.). This independent ground of recovery, if it exists, only requires the injured plaintiff to choose restoration of benefits as his remedy, subject to the right of the defendant to plead and prove a right of offset; this independent ground does not require the consumer to plead and prove predicates to recovery, such as notice and tender, not found within the statutory scheme of the DTPA. *Smith v. Baldwin,* 611 S.W.2d at 616.

However, even if this ground of recovery is recognized in Texas, the Carrows have failed to establish their right to such recovery. At a minimum, the consumer would have to obtain a finding of fact as to what money or property, real or personal, had been acquired by the defendant in violation of the DTPA. The Carrows did not request such a finding. Without such a finding the Carrows cannot recover under the literal language of section 17.50(b)(3).

We hold that the trial court did not err in refusing to award the Carrows the remedy of rescission and restitution. The Carrows' third point of error is overruled.

In their second point of error the Carrows argue that the trial court erred in submitting a jury issue on whether the plaintiffs accepted the motoryacht after they had discovered the defects. As discussed above, one of the Carrows' possible grounds of recovery was under the UCC.

Acceptance is a defensive element of such a claim, and therefore, the issue was not irrelevant. Furthermore, the jury issue was supported by the pleadings of the defendants. Both Bayliner and Aqualand pleaded that the Carrows had "accepted the boat and affirmed the contract." This pleading was sufficient to provide fair notice and support submission of the jury issue, particularly since the Carrows did not specially except to the pleading. *See Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 186 (Tex.1977). Having pleaded and produced some evidence of "acceptance," appellees were entitled to have the issue submitted. The Carrows' second point of error is overruled.

Finally, the Carrows' fourth point of error presents a factual sufficiency attack on the jury's finding of no damages in the Carrows' action against Aqualand. In answer to Question 10, the jury found that Aqualand's unconscionable actions were a producing cause of actual damages to the Carrows. However, in answer to Question 12, the jury found zero damages against Aqualand. The jury also found that Aqualand had a right of offset in the amount of $7,000 against any damages owed.

In reviewing factual insufficiency points of error, the court considers all of the evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). After reviewing all of the evidence, we cannot say that the jury's finding of zero damages as to Aqualand is against the great weight and preponderance of the evidence. The jury was instructed in Question 12 to consider only the reasonable and necessary costs to repair specified defects in the boat. Question 10, however, contained no such limitation, and the jury could have concluded that Aqualand was a producing cause of damages other than those listed in Question 12. For example, although the Carrows pleaded and offered evidence that they had been damaged by loss of use of the boat, they did not request a jury issue on that element of damage. In addition, the evidence at trial showed that many of the defects in the boat had been repaired by the time of trial. The jury could reasonably have concluded that the damages attributable to Aqualand had already been corrected or repaired and that zero was the appropriate amount of damage caused by Aqualand. We hold that the jury's answer to Question 12 is not so against the great weight and preponderance of the evidence as to be manifestly unjust. The Carrows' fourth point of error is overruled.

The portion of the trial court's judgment disregarding the three damage findings is reversed, and we render judgment that the Carrows recover from Bayliner the additional sum of $13,575, plus prejudgment interest on this sum at the rate of ten percent per annum from November 23, 1986, to the date of judgment, and post-judgment interest on this sum at the rate of ten percent per annum from the date of judgment until paid. The remainder of the trial court's judgment is affirmed. Costs are taxed one-third against Bayliner and two-thirds against the Carrows.