# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON REHEARING

## NO. 03-13-00082-CV

**George Thurman Lauret, Appellant**

**v.**

**Meritage Homes of Texas, LLC d/b/a Monterey Homes, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-09-003096, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## O P I N I O N

We withdraw our opinion and judgment dated October 10, 2014, and substitute the following in their place. We overrule the appellee's motion for rehearing.

Appellant George Thurman Lauret sued appellee Meritage Homes of Texas, LLC for, among other things, violations of the Texas Deceptive Trade Practices Act (the DTPA) in connection with Meritage Homes's sale of residential property to Lauret. *See* Tex. Bus. & Com. Code § 17.46. The jury found in favor of Lauret, but the trial court entered a take-nothing judgment in favor of Meritage Homes, concluding that Lauret was not entitled to restoration under the DTPA because he failed to establish that he had no adequate remedy at law. On appeal, Lauret asserts that he is not required to prove that he lacked an adequate remedy at law to be entitled to restoration

under the DTPA. We agree and therefore reverse the trial court's judgment and remand this case for further proceedings.

## BACKGROUND

Lauret contracted to have a new home built in the Rough Hollow development in Lakeway, Texas. According to Lauret, he negotiated the purchase of this property with Bill Cozart and Brady Baird, both of whom are employees of Monterey Homes, which is a division of Meritage Homes. Lauret asserted that from the beginning of these conversations, he made it clear to Cozart that the "main thing" that he and his future wife wanted was to have a view of Lake Travis. Lauret explained that Cozart and Baird repeatedly assured him that his property's view of the lake would be protected because the adjoining lots had a twenty-five-foot setback from his property line. Lauret stated that he purchased the property based on these assurances. The total purchase price of the land and newly constructed home was $951,900.

Before construction began on Lauret's property, Cozart contacted Lauret to inform him that one of his neighbors was planning to build a pool and pool house that would partially obstruct Lauret's view of the lake. According to Monterey Homes, Lauret's neighbor deceived the subdivision's "Architectural Control Committee" into giving him a variance for the twenty-five-foot setback, thereby allowing the neighbor to build within five feet of Lauret's property line. The Architectural Control Committee subsequently revoked the neighbor's permit but informed the neighbor that he could resubmit revised plans that would not obstruct Lauret's view as much. As of the time of trial, Lauret's neighbor had not resubmitted plans for a pool house.

2

Lauret asserted that had he known the twenty-five-foot setback could be waived by the Architectural Control Committee, he would not have purchased his home. As Lauret explained, Meritage Homes included the twenty-five-foot setback on its plat that it showed to customers, but no such setback was memorialized in the subdivision's plat filed with the City of Lakeway, established in a zoning ordinance, or "otherwise established by recorded separate instrument." Lauret attempted to sell his home, but due to a decline in the local housing market, the home had depreciated nearly $300,000 in value by that time.

Lauret sued Meritage Homes, asserting that there was a mutual mistake between the parties as to the terms of the contract; that Meritage Homes had committed statutory fraud under section 27.01 of the Business and Commerce Code; and that Meritage Homes made false, misleading, or deceptive statements in violation of the DTPA. *See id.* § 17.46(b)(12) ("representing that an agreement confers or involves rights, remedies, or obligations which it does not" is unlawful under DTPA). The jury found in favor of Lauret on all claims but concluded that he was contributorily negligent for 49% of his injuries. Lauret elected to "restore" his original purchase price for the home in exchange for returning the property to Meritage Homes, effectively rescinding the parties' original contract. *See id.* § 17.50(b)(3) (allowing prevailing party to obtain "orders necessary to restore . . . any money or property . . . which may have been acquired in violation" of the DTPA). However, in its written judgment, the trial court concluded that Lauret had failed to prove that he lacked an adequate remedy at law, and therefore Lauret was not entitled to restoration of his purchase price. Accordingly, the trial court rendered a take-nothing judgment and awarded Meritage Homes applicable court costs. This appeal followed.

3

## DISCUSSION

**Adequate legal remedy under DTPA**

In his sole issue on appeal, Lauret asserts that the trial court erred in denying his requested remedy of restoring the parties to the position that they would have been in had the contract not been formed. Specifically, Lauret asserts that although the common law requires proof that monetary damages are inadequate before a party can be entitled to rescind a contract, there is no such requirement for restoration under the DTPA. *See id.* Therefore, according to Lauret, he was entitled to restoration of his purchase price in exchange for restoring the property to Meritage Homes.

Whether restoration under the DTPA encompasses the common-law elements of rescission is an issue of statutory construction and therefore a question of law that we review de novo. *See Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 825 (Tex. 2012); *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008). When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. *First Am. Title Ins. Co.*, 258 S.W.3d at 631–32. In determining legislative intent, we first consider the plain language of the statute. *General Motors Corp. v. Bray*, 243 S.W.3d 678, 685 (Tex. App.—Austin 2007, no pet.). When statutory text is clear, it is determinative of legislative intent, unless enforcing the plain meaning of the statute's words would produce an absurd result. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). We consider the statute as a whole, reading each word in context rather than in isolation, and unless a different definition is supplied by the legislature, we assume the words chosen have their plain and ordinary meaning. *See City of Rockwell v. Hughes*, 246 S.W.3d

4

621, 625–26 (Tex. 2008). Only when the statutory text is ambiguous "do we resort to rules of construction or extrinsic aids." *Shook v. Walden*, 304 S.W.3d 910, 917 (Tex. App.—Austin 2010, no pet.) (internal quotations omitted); *see also Combs v. Metropolitan Life Ins. Co.*, 298 S.W.3d 793, 796–97 (Tex. App.—Austin 2009, pet. denied).

"[T]he DTPA did not codify the common law, and . . . one of its primary purposes is 'to provide consumers a cause of action for deceptive trade practices without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit.'" *Cruz*, 364 S.W.3d at 825 (quoting *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex. 1980)). Under the DTPA's election-of-remedies provision, "each consumer who prevails [in his DTPA claim] may obtain" his choice of the following remedies:

(1) the amount of economic damages found by the trier of fact . . . ;[1]

(2) an order enjoining such acts or failure to act;

(3) orders necessary to restore any party to the suit any money or property, real or personal, which may have been acquired in violation of this subchapter; and

(4) any other relief which the court deems proper . . . .

Tex. Bus. & Com. Code § 17.50(b).

"[I]t cannot be doubted that the Legislature intended 'may' [in the election-of-remedies provision] to indicate that the consumer has several remedies from which to choose and

---

[1] Subsection (b)(1) also provides that if the defendant committed the unlawful conduct knowingly, the consumer may recover money damages for mental anguish, and if the defendant committed the unlawful conduct intentionally, the consumer may be entitled to punitive damages. *See* Tex. Bus. & Com. Code § 17.50(b)(1).

that the court is to grant the consumer that relief which the consumer proves a right to receive." *Woods v. Littleton*, 554 S.W.2d 662, 669 (Tex. 1997). Thus, if Lauret established that he was entitled to restoration of his purchase in exchange for returning his property to Meritage Homes, the trial court was required to honor his election of that remedy. *See id.*; *see also Cruz*, 364 S.W.3d at 825–26 (concluding that restoration under DTPA requires "mutual restoration and accounting"). Restoration necessarily involves "each party restor[ing] property received from the other" and "is generally limited to cases in which counter-restitution by the claimant will restore the defendant to the status quo ante." *Cruz*, 364 S.W.3d at 826 (internal citations omitted).

The supreme court recently concluded that restoration under the DTPA "merely provides a prevailing consumer the option of unwinding the transaction, returning the parties to the status quo ante." *Id.* The court noted that restoration is similar to the common-law remedy of rescission, and like rescission, restoration is appropriate when mutual restitution can "restor[e] both parties to their original position." *Id.* at 825–26. However, the court was careful to note that the mere fact that restoration is similar to rescission "does not compel the wholesale adoption of all of the common law rescission requirements . . . ." *Id.* As the supreme court explained, "DTPA restoration is an independent ground of recovery, requiring only that the consumer choose that remedy subject to the defendant's right to plead and prove an offset, but not incorporating common law predicates like notice and tender." *Id.* at 826–27 (citing *Carrow v. Bayliner Marine Corp.*, 781 S.W.2d 691, 695 (Tex. App.—Austin 1989, no writ)).

Similarly in this case, we conclude that requiring a party to prove that he lacks an adequate remedy at law is inconsistent with DTPA restoration. Under the common law, "rescission

6

and specific performance are equitable remedies used as substitutes for monetary damages when such damages would be inadequate." *Scott v. Sebree*, 986 S.W.2d 364, 368 (Tex. App.—Austin 1999, pet. denied). Because equitable remedies are generally disfavored under the common law, a party seeking rescission is required to prove that legal remedies—i.e., monetary damages—would not adequately compensate him for his injuries. *See Isaacs v. Bishop*, 249 S.W.3d 100, 109–10 (Tex. App.—Texarkana 2008, pet. denied) (discussing factors for determining whether party entitled to rescission); *Scott*, 986 S.W.2d at 368.

Although DTPA restoration is also an equitable remedy, the DTPA's election-of-remedies provision affords a prevailing consumer the right to choose his remedy, and a trial court must honor a consumer's choice of restoration if restoration with an appropriate offset can adequately return the parties to their prior positions. *See Cruz*, 364 S.W.3d at 826–27; *see also Woods*, 554 S.W.2d at 669 (noting that language of DTPA indicates legislature intended consumer to have right to elect remedies). Thus, unlike common-law rescission, restoration under the DTPA is not limited to instances when monetary damages would be inadequate. To read such a requirement into the DTPA would change the language of the election-of-remedies provision to state that a consumer may choose an injunction or restoration under subsections (b)(2) and (b)(3) only if the consumer first proves that economic damages under (b)(1) are inadequate. *See* Tex. Bus. & Com. Code § 17.50(b)(1)–(3). This additional limitation is not supported by the plain language of the statute or supreme court precedent interpreting the DTPA. *See id.*; *Cruz*, 364 S.W.3d at 826–27 (noting consumer need only choose restoration, subject to defendant's offset); *Woods*, 554 S.W.2d at 669 (concluding legislature intended to afford consumers their choice of remedies under DTPA).

7

Therefore, we conclude that a consumer seeking restoration under the DTPA is not required to prove that he lacks an adequate remedy at law.

Our conclusion is consistent with the Restatement's approach toward restitution. *See* Restatement (Third) of Restitution and Unjust Enrichment § 4 (2011); *see also Cruz*, 364 S.W.3d at 827 (adopting Restatement's disavowment of notice-and-tender rule to DTPA). As the Restatement explains, "remedies within the law of restitution and unjust enrichment may have originated in law, in equity, or in a combination of the two," and therefore "a claimant otherwise entitled to a remedy for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law." Restatement § 4(1)–(2). As the comments explain, the traditional requirement that a party prove the inadequacy of legal remedies "is a spurious proposition [that] rests on an obvious fallacy, and it obscures what courts are actually doing when they invoke it." *See id.* § 4 cmt. e. Thus, although our conclusion that a consumer seeking restoration does not have to prove that he lacks an adequate remedy at law is based on the plain language of the DTPA itself, our reading of the DTPA is consistent with the Restatement. *See Cruz*, 364 S.W.3d at 827.

We conclude that Lauret was not required to prove that he lacked an adequate remedy at law in order to be entitled to restoration under the DTPA. Because the trial court erred in concluding otherwise, we sustain Lauret's sole issue on appeal; reverse the trial court's take-nothing judgment in favor of Meritage Homes; and remand this case to the trial court to (1) determine whether the parties can, with an appropriate offset, be restored to the status quo ante and (2) if so, restore the parties to their original position, subject to Meritage Homes's right to plead and prove an offset. *See id.* at 826.

8

**Alternative grounds for affirming take-nothing judgment**

In its appellate brief, Meritage Homes asserts that even if Lauret were not required to prove that he lacked an adequate remedy at law, there are two alternative grounds for affirming the trial court's take-nothing judgment. *See* Tex. R. Civ. P. 324(c) (noting that appellee who obtained j.n.o.v. on one or more questions "may bring forward by cross-point . . . any ground which would have vitiated the verdict"). First, Meritage Homes claims that restoration is inappropriate because the parties cannot be returned to the status quo ante. *See Cruz*, 364 S.W.3d at 825–26 (noting that restoration is "limited to cases in which counter-restitution by the claimant will restore the defendant to the status quo ante") (internal citations omitted). Specifically, Meritage Homes argues that given the significant depreciation in the value of the property, Meritage Homes would be unduly prejudiced if it were required to retake possession of the property.

Whether Meritage Homes, with an appropriate offset, can be adequately restored to the status quo ante is a question of fact that the trial court did not address. Because the trial court has not made a factual finding on this issue, it would be inappropriate for this Court to address Meritage Homes's argument at this time.[2] *See Texas Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex. 1986) ("[A] court of appeals cannot make original findings of fact, it can only 'unfind' facts.") (internal citations omitted).

Meritage Homes also asserts that because the jury did not make an affirmative finding that Lauret purchased this property as a residence, the DTPA does not apply to this dispute.

---

[2] For this same reason, we decline to reach Meritage Homes's other factual argument that restoration would unfairly prejudice Lauret's current tenants.

Under section 17.49(g) of the Business and Commerce Code, "a transaction . . . involving total consideration by the consumer of more than $500,000, other than a cause of action involving a consumer's residence," is exempted from the protections of the DTPA. *See* Tex. Bus. & Com. Code § 17.49(g). Meritage Homes argues that because it was undisputed that this was a transaction involving more than $500,000 in consideration, Lauret was required to secure an affirmative jury finding that this cause of action involved his residence, and Lauret's failure to do so is an alternative ground for affirming the trial court's take-nothing judgment.[3] *See Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 530 (Tex. 1997) (concluding defendant entitled to take-nothing judgment where plaintiff failed to secure jury answer on essential element of negligence claim).

At trial, Lauret testified that he and his wife "were buying [this property] as a home to live in. . . . We intended to live there. Yes, it was going to be our nest egg." Lauret further explained that he purchased the property in his own name, rather than in the name of his commercial trust's name, and emphasized that he and his wife went to great trouble to decide what upgrades and changes they wanted to have done during construction—something they would not have done had they intended to purchase an investment property. Similarly, Cozart testified that Lauret represented to him that he was buying the property as a residence, and Cozart stated that Meritage Homes had a policy against selling property to investors because "[t]hat's bad for the market." Finally, Cozart

---

[3] Alternatively, Meritage Homes asserts that it requested a jury question about whether Lauret purchased this home as a residence, and the trial court erred in refusing to submit that question to the jury. Meritage Homes's proposed jury question states as follows: "Did Lauret's claim relate to a transaction involving total consideration of more than $500,000 for a property that was not his residence?"

10

stated that Meritage Homes had cancelled at least three contracts in the past when it learned that the purchasers intended to use the property as an investment rather than a residence.

On appeal, Meritage Homes asserts that despite this testimony, there was still a fact question about whether Lauret purchased the property as his residence. Specifically, Meritage Homes argues that because Lauret ultimately rented the property to tenants, the jury could have reasonably believed that he intended it to be investment property. Thus, according to Meritage Homes, Lauret was required to secure a jury finding as to whether this was a contract for purchase of Lauret's residence. We disagree.

As outlined above, both Lauret and Cozart testified that at the time the parties entered into the contract for purchase of this home, both parties represented and understood that Lauret was purchasing this home for use as his residence. Meritage Homes did not elicit any testimony or offer any evidence to contradict Lauret's and Cozart's testimony. The evidence establishes that this was a contract for the purchase of a consumer's residence as a matter of law and, therefore, the DTPA applies. *See* Tex. Bus. & Com. Code § 17.49(g); *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005) ("Jurors cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistences, and could have been readily controverted.") (internal citations omitted). Lauret's failure to secure an affirmative jury finding to that effect would not support vitiating the jury's verdict in Lauret's favor. *See City of Keller*, 168 S.W.3d at 814–15 ("[U]ncontroverted issues need not be submitted to the jury at all.") (internal citations omitted). Thus, Meritage Home's argument is not a valid alternative ground for affirming the trial court's take-nothing judgment.

**CONCLUSION**

We reverse the trial court's judgment in favor of Meritage Homes and remand the case to the trial court to restore the parties as contemplated by section 17.50(b)(3) of the Business and Commerce Code, subject to Meritage Homes' right to plead and prove an offset.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Reversed and Remanded on Rehearing

Filed:   December 17, 2014