**338 INDUSTRIES, LLC, a Texas Limited Liability Company d/b/a Stratified Data, Appellant**

v.

**POINT COM, LLC d/b/a White Lion Internet Agency, Appellee**

No. 07-15-00409-CV

Court of Appeals of Texas, Amarillo.

June 2, 2017

Rehearing Overruled August 29, 2017

David Hutchins, Austin, TX; Randy Howry, Howry Breen & Herman, LLP, Austin, TX, for appellee.

Dana M. Campbell, Owens, Campbell & Aiken, LLP, Dallas, TX; Robert Clary, Robert Clary, PLLC, Dallas, TX, for appellant.

Before CAMPBELL and HANCOCK and PIRTLE, JJ.[1]

## OPINION

James T. Campbell, Justice

The trial court signed a judgment in favor of 338 Industries, LLC d/b/a Stratified Data in its suit against Point Com, LLC d/b/a White Lion Internet Agency. The suit arose from a contract under which White Lion undertook to create a website and perform related services for Stratified Data. The jury found White Lion breached the contract, breached express or implied warranties and violated the Deceptive Trade Practices Act.

Both parties filed notice of appeal. All their issues on appeal address the amounts awarded Stratified Data in the court's judgment. No challenge is raised to the jury's findings related to liability. We will affirm.

### Background

As Stratified Data's petition described it, White Lion contracted to create a website that would allow political campaigns, as paid subscribers, to access and use Stratified Data's online database of information. The January 2010 contract's statement of work described "deliverables" for several website capabilities, including "core website design," "user profiles," an "online data store," "campaign relationship management" and "Google Maps Block Walk Integration." It estimated cost of the work would be $79,500, and contained an "estimated timeline" of 16-18 weeks. The statement of work also described services that could be on-going, including website hosting services and maintenance. The contract stated a term of three years, automatically renewing for additional one-year terms unless terminated by either party. An addendum to the contract included a limitation of liability clause and an express warranty under which White Lion agreed to repair, at its expense, any failure in the software that occurred during the first ninety days after Stratified Data's acceptance of the deliverables.

The addendum also contained a payment schedule by which three-fourths of White Lion's fee was to be paid during the course of the work and the balance "immediately following [Stratified Data's] final acceptance of all Deliverables."

The contract does not say so expressly, but the parties understood Stratified Data planned to have its website operating in time for use before the November 2010 elections.

Evidence shows the parties worked in close communication on design, development and testing of the website. Progress was slower than anticipated. By July 2010, White Lion's president apologized to Stratified Data's president for the slow progress. Work continued through the summer and into the fall, with increasing tension between the parties. Disagreements arose over the agreed scope of the work.

By late September, White Lion was pushing for payment of the last fee installment. In mid-October, Stratified Data asserted that remaining issues with the website's performance were not mere troubleshooting issues but defects that must be corrected before final payment. Final payment was made in November, bringing the total to $85,069.89, including taxes. After the payment, Stratified Data

---

1. Mackey K. Hancock, retired, not participating.

continued to identify problems with the website's operation, and White Lion continued efforts to remedy them. The website was not available for commercial operation by the November elections.

Stratified Data terminated the contract in early December. It invoked the contract's termination for cause provision, advising White Lion its termination was due to its "willful malfeasance" or "gross negligence."

Stratified Data filed suit, and the case was tried in February 2015. Stratified Data produced evidence it had paid a total of $178,336 to three vendors to repair the website. It paid Noctual LLC $21,281, Trifecta Interactive Marketing, LLC $75,701 and Rackspace $81,354. The jury found White Lion (a) engaged in false, misleading, or deceptive acts or practices, (b) failed to comply with a warranty, and (c) failed to comply with its agreement with Stratified Data. The jury also found Stratified Data gave adequate notice of a breach and a reasonable opportunity to cure the defects, and that White Lion's failure to comply with its agreement was not excused. The jury further found that White Lion's violation of the DTPA was not knowing or intentional.

Asked to determine the reasonable and necessary cost of repair damages paid to each of the three vendors resulting from White Lion's false, misleading or deceptive act or practice, the jury awarded $7,218.50 for the work done by Noctual, $5,062.50 for Trifecta's services, and none for the services performed by Rackspace. Asked to determine the cost of repair damages resulting from White Lion's failure to comply with its warranty, as to each of the

three vendors, the jury awarded $20,812.50 for repairs performed by Trifecta, and none for services of Noctual or Rackspace. The jury was asked a similar question regarding damages resulting from White Lion's breach of the contract, again itemizing the award for repairs performed by each of the three vendors. The jury awarded no damages for that claim.

The parties agreed the issue of attorney's fees would be tried to the bench. Before that hearing, held in July 2015, the parties submitted briefs to the court on attorney's fees and other issues. Stratified Data argued it was entitled to an award under DTPA section 17.50(b)(3) restoring to it money acquired by White Lion in violation of the DTPA.[2] It contended that unwinding its transaction with White Lion and restoring the parties to their status quo ante required that it be awarded the $85,069.86 it paid White Lion, in addition to the repair damages found by the jury.

The court received evidence on Stratified Data's attorney's fees and signed a final judgment the next day, awarding it $20,812.50 in damages for its DTPA breach of warranty claim and $99,000 for attorney's fees through trial.[3] White Lion subsequently filed a motion to modify the judgment, asking the trial court to interpret and enforce the contract's limitation of liability clause.[4] The trial court denied White Lion's motion. Thereafter, the trial court filed findings of fact and conclusions of law. The appeals followed.

### Analysis

#### Stratified Data's Appeal

■ Stratified Data raises eleven issues. Its first six issues challenge the court's

---

2. *See* Tex. Bus. & Com. Code Ann. § 17.50(b)(3) (West 2015).

3. The final judgment also provides for attorney's fees on appeal.

4. The clause limited White Lion's "aggregate liability" "for any reason and upon any cause of action" to the amount paid by Stratified Data under the contract.

failure to award it restoration relief under DTPA section 17.50(b)(3). Stratified Data contends the court erred in denying its request for restoration of the approximately $85,000 it paid White Lion for the software. We will address the issues together, and will overrule all six.

Stratified Data contends it sought relief in the form of restoration under section 17.50(b)(3) of the DTPA and, because the jury found violations of the DTPA, the trial court had no discretion to withhold the restoration remedy. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006) (prevailing party is "entitled to judgment on the most favorable theory supported by the pleadings, evidence, and verdict").

Under section 17.50(b)(3) of the DTPA an injured consumer who prevails at trial may obtain, among other relief, "orders necessary to restore to any party to the suit any money or property, real or personal, which may have been acquired in violation of [the Act]." TEX. BUS. & COMM. CODE ANN. §§ 17.50(b)(3), 17.41 (West 2015); *see Woods v. Littleton*, 554 S.W.2d 662, 669 (Tex. 1977) (cannot be doubted that Legislature intended "may" in section 17.50(b) to indicate consumer has several remedies from which to choose and court is to grant that relief which consumer proves a right to receive).

As the court noted in *Lauret v. Meritage Homes of Tex., LLC*, 455 S.W.3d 695 (Tex. App.—Austin 2014, no pet.), the supreme court has found restoration is similar to the common-law remedy of rescission but does not incorporate all the requirements necessary to entitle a litigant to rescission. *Id.* at 699 (citing and quoting *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 825-26 (Tex. 2012)). Thus in *Lauret*, the court held the plaintiff was not re-

quired to prove he lacked an adequate remedy at law before electing the remedy of restoration. *Id.* at 700.

Stratified Data's petition asserted entitlement to "all relief required to restore to [it] the money that White Lion acquired from [it] in violation of the [DTPA]," in addition to damages and other relief. However, the jury was asked only to determine its entitlement to repair damages; no question sought a determination of what money or other property White Lion acquired in violation of the DTPA. White Lion contends the absence of such a finding is fatal to Stratified Data's contention the court erred by denying it restoration relief, and we agree. In any event, we would not reach a contrary conclusion in this case because to do so would run counter to an opinion of the Austin court.[5]

█ In language cited by the supreme court in *Cruz*, the restoration remedy was referred to as an "independent ground of recovery." *Cruz*, 364 S.W.3d at 826-27 (citing *Carrow v. Bayliner Marine Corp.*, 781 S.W.2d 691, 696 (Tex. App.—Austin 1989, no writ)). In its discussion of the requirements necessary to establish the right to such recovery, the court in *Carrow* held, "[a]t a minimum the consumer would have to obtain a finding of fact as to what money or property, real or personal, had been acquired by the defendant in violation of the DTPA." *Id.* at 696. Noting the plaintiffs had not requested such a finding, the court concluded they could not recover "under the literal language of section 17.50(b)(3)." *Id.* We see nothing in *Lauret* to suggest the Austin court has abandoned its view that a consumer who elects the remedy of restoration must bring about a factual determination of the property acquired in violation of the DTPA.

---

5. This appeal was transferred, by order of the Texas Supreme Court, to this Court from the Third Court of Appeals. *See* TEX. R. APP. P. 41.3.

Nor could we find that the record establishes as a matter of law the amount White Lion acquired in violation of the DTPA. In *Lauret*, the court rejected the defendant's contention that a fact question remained as to whether the plaintiff had purchased the property as his residence. 455 S.W.3d at 702. It found the evidence established that fact as a matter of law, and declined to hold the plaintiff's failure to obtain a jury finding on the question provided an alternative ground to affirm the trial court's take-nothing judgment. *Id.* Here, under the instructions given, the jury could have found any of a number of actions or omissions by White Lion were violative of the DTPA.[6] We agree with White Lion that without a fact finding, a determination that a particular amount of its fee was acquired in violation of the statute would merely be based on speculation. *See Park Forest Baptist Church v. Park Forest Ctr.*, No. 05-96-00188-CV, 1998 WL 107951, at *4-5, 1998 Tex. App. LEXIS 1261, at *12-14 (Tex. App.—Dallas Feb. 27, 1998, pet. denied) (not designated for publication) (rejecting contention jury question was unnecessary because property obtained in violation of DTPA was undisputed, citing *Carrow*).

Following *Carrow*, we find Stratified Data did not establish its entitlement to restoration relief. That conclusion requires that we overrule its first six issues.

By its seventh issue, Stratified Data contends there was no evidence to support the jury's findings on damages. It argues the evidence it spent $178,336 to correct deficiencies in White Lion's software went unrefuted. Because Stratified Data bore the burden to prove its damages at trial, to sustain its issue on appeal it must demonstrate the evidence establishes, as a matter of law, all vital facts in support of the issue. *Powell Elec. Sys., Inc. v. Hewlett Packard Co.*, 356 S.W.3d 113, 126-27 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Kitchen v. Frusher*, 181 S.W.3d 467, 473-74 (Tex. App.—Fort Worth 2005, no pet.) (both citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001)). Reviewing the issue, we first examine the record for evidence that support's the jury's finding; only if we find none do we then examine the record to determine if the contrary proposition is established as a matter of law. *Powell Elec. Sys.*, 356 S.W.3d at 126.

Our courts hold that a jury has broad discretion to award damages within the range of evidence presented at trial. *See CCC Grp., Inc. v. S. Cent. Cement,*

---

**6.** The charge defined "false, misleading, or deceptive act or practice" to mean any one of the following:

 a. Representing that the goods and services that White Lion was providing pursuant to the [a]greement were of a particular standard, quality or grade, when they were another; or

 b. Representing that work or services were performed on goods when, in fact, they were not; or

 c. Failing to disclose information about goods or services that was known at the time of the transaction and with the intention to induce Stratified Data into the transaction it otherwise would not have entered into if the information had been disclosed.

The charge defined "failure to comply with a warranty" to mean any of the following:

 a. Failing to comply with an express warranty; or

 b. Furnishing goods that, because of lack of something necessary for adequacy, were not fit for the ordinary purposes for which such goods are used for; or

 c. Furnishing or selecting goods that were not suitable for a particular purpose if White Lion had reason to know the purpose and also had reason to know that Stratified Data was relying on White Lion's skill or judgment to furnish suitable goods; or

 d. Failing to perform services in a good and workmanlike manner.

*Ltd.,* 450 S.W.3d 191, 200 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Powell Elec. Sys.,* 356 S.W.3d at 126-27). "Evidence corresponding to the exact amount found by the trier of fact is not essential." *Id.* "But the verdict must fall within the range of the evidence presented, and a jury may not 'pull figures out of a hat' in assessing damages." *Id.* (citing *First State Bank v. Keilman,* 851 S.W.2d 914, 931 (Tex. App.—Austin 1993, writ denied)).

■ As noted, the court's judgment awarded Stratified Data the $20,812.50 damages the jury found on its DTPA claim for breach of warranty. The specific question asked the jury was "[w]hat are the reasonable and necessary cost of repair damages, if any, suffered as a result of the failure, if any, of White Lion to comply with a warranty?" The question was limited to repairs performed by the three listed vendors.

White Lion argues the jury could have accepted the testimony of its witnesses to the effect that it was willing to stand behind its work on the website and would have repaired defects at no cost to Stratified Data. We agree with that contention and further note that the trial testimony reflected the disagreements between the parties over the scope of the work required under their contract. White Lion's lead developer testified he had reviewed the changes made by Noctual and Trifecta to the code White Lion created for the website. He said much of those vendors' work was not the correction of defects in White Lion's work. He expressed the opinion those vendors' work involved the correction of only one "valid bug." He later said that those vendors had made efforts to "optimize" the queries to which users of the website would respond and correct some unprofessional language in some of the code. But, he concluded, "beyond I guess the bug that I found and the query optimizations, a lot of the work appeared to be them taking their own direction with the site and changing the functionality."

The jury could have believed the testimony of Stratified Data's expert to the effect that all its expended funds reflected reasonable and necessary repair costs. But it was free also to accept the evidence that the charges of its vendors did not reflect the reasonable and necessary cost of repair damages suffered as a result of White Lion's failure to comply with a warranty. The jury's award was within the range of the evidence it heard. As this Court has observed in the context of other damages, the factfinder, whether jury or trial court, is the sole judge of the credibility of the witnesses and the weight to be given their testimony; the factfinder may believe one witness and disbelieve another. *Ponce v. Sandoval,* 68 S.W.3d 799, 806 (Tex. App.—Amarillo 2001, no pet.) (citations omitted); *see also Spring Creek Vill. Apts. Phase V, Inc. v. Gen. Star Indem. Co.,* 261 S.W.3d 206, 216-17 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex. 1986)).

For those reasons, Stratified Data's seventh issue is overruled.

Attorney's Fees

■ Stratified Data's remaining issues address the trial court's award of attorney's fees. We review the trial court's judgment awarding attorney's fees pursuant to the DTPA under an abuse of discretion standard. *Murray v. Grayum,* No. 03-10-00165-CV, 2011 WL 2533796, at *5, 2011 Tex. App. LEXIS 4810, at *15 (Tex. App.—Austin June 24, 2011, pet. denied) (mem. op.) (citing *Bohls v. Oakes,* 75 S.W.3d 473, 480 (Tex. App.—San Antonio 2002, pet. denied)). The DTPA requires that consumers who prevail on DTPA claims be awarded reasonable and neces-

sary attorney's fees. *Murray*, 2011 WL 2533796, at *5, 2011 Tex. App. LEXIS 4810, at *16 (citing Tex. Bus. & Com. Code § 17.50(d)). The reasonableness and necessity of attorney's fees are fact questions and must be shown by evidence. *Id.* (citations omitted).

▮ Stratified Data's lead trial attorney testified in support of its attorney's fees request. His testimony and his firm's invoices in evidence show Stratified Data had incurred more than $190,000 in legal fees and expenses. He testified the fees and expenses were both necessary and reasonable. White Lion did not offer evidence to rebut his testimony.

White Lion contends the court's award of $99,000 was supported by the results Stratified Data obtained at trial. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (including, among factors that may be considered to determine reasonableness of fee award, the amount involved in the litigation and the results obtained). It points out Stratified Data's petition asked for actual damages of $1,000,000 and treble damages for a knowing or intentional violation of the DTPA. During trial, Stratified Data attempted to prove economic damages in the amount of $310,112.73 and argued it was entitled to trebled damages of that amount. At the close of trial, Stratified Data asked the jury to award it the amount of $178,336 and treble damages. The jury awarded only $20,812.50 for its breach of warranty claim. The jury found White Lion did not knowingly or intentionally violate the DTPA, precluding a recovery of treble damages. We agree the amount in controversy and Stratified Data's recovery are among the factors the trial court likely considered when it assessed the reasonableness of the attorney's fees incurred, and that the evidence regarding those factors support the court's

award. *Arthur Andersen*, 945 S.W.2d at 818.

Stratified Data's evidence and argument to the court addressed others of the *Arthur Andersen* factors, including the time and labor required, the difficulty and complexity of the issues involved, the likelihood that the representation would preclude other employment, the fees customarily charged, time limitations, nature and length of counsel's relationship with Stratified Data, the significant experience level of counsel involved in the representation, and the hourly fee arrangement with Stratified Data. *See Arthur Andersen*, 945 S.W.2d at 818. We do not perceive the information presented with respect to those factors to be damaging to Stratified Data's fee request, but neither do those factors demonstrate the court abused its discretion by its award. *See Rapid Settlements, Ltd. v. Settlement Funding, LLC*, 358 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citations omitted) (in addition to listed factors, court may also consider "the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties"). *See also Brazos Cty. Water Control & Improv. Dist. No. 1 v. Salvaggio*, 698 S.W.2d 173, 178 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (["t]he trial court has great latitude in fixing attorneys' fees. The court must consider several elements, including the amount involved, the actual services performed, the time required for trial, the situation of the parties, and the results obtained.") (citation omitted).

▮ Having reviewed the entire record, we cannot find any indication the trial court abused its discretion in its award of attorney's fees to Stratified Data, even though it awarded an amount less than its

counsel testified it incurred· in fees and expenses. The "trier of fact is not required to award attorney's fees equal to those testified at trial, even when that testimony is uncontradicted." *Hidden Forest Home-owners Ass'n v. Hern,* No. 04-10-00551-CV, 2011 WL 6089881, at *7, 2011 Tex. App. LEXIS 9566, at * 22 (Tex. App.—San Antonio Dec. 7, 2011, no pet.) (mem. · op.) (citations omitted). We resolve Stratified Data's remaining issues against it.

White Lion's Appeal

 White Lion brings one point of error in its appeal wherein it argues the trial court committed reversible error by failing to modify the judgment to conform with the contract's limitation of liability clause. Stratified Data argues the trial court correctly refused because the limitation language did not consist of bold-face type, did not include a heading reading "Waiver of Consumer Rights" and did not reference the DTPA. *See* TEX. BUS. & COMM. CODE ANN. § 17.42 (West 2015).

We agree with Stratified Data that the contract's limitation language does not comply with the requirements of section 17.42. For that reason, the limitation is ineffective as against White Lion's liability for false, misleading, or deceptive acts or practices under the laundry list of violations contained in DTPA section 17.46. *See, e.g., Arthur's Garage,· Inc. v. Racal-Chubb Sec. Sys.,* 997 S.W.2d 803, 811 (Tex. App.— Dallas 1999, no pet.) (finding contract provision limiting liability ineffective to limit liability for DTPA section 17.46 violations); *Coonly v. Gables Residential Servs.,* No. 04-12-00702-CV, 2013 WL 6022261, at *7, 2013 Tex. App. LEXIS 13862, at *19-20

(Tex.· App.—San Antonio Nov. 13, 2013, no pet.) (finding waiver language failed to meet section 17.42 requirements).[7] The application of the requirements of section 17.42 to Stratified Data's ·DTPA claims based on breach of express or implied warranties, however, is less clear. *See, e.g., Materials Mktg. Corp. v. Spencer,* 40 S.W.3d 172, 175 (Tex. App.—Texarkana 2001, no pet.); *Arthur's Garage,* 997 S.W.2d at 812 (both citing *Southwestern Bell Tel. Co. v. FDP Corp.,* 811 S.W.2d 572, 576 (Tex. 1991)).

 We nonetheless overrule White Lion's point of error. The contract's limitation of liability paragraph read as follows:

Contractor's Limitation of Liability. CONTRACTOR SHALL HAVE NO LIABILITY ·WITH RESPECT TO ITS OBLIGATIONS UNDER . THIS AGREEMENT OR · OTHERWISE FOR LOST PROFITS, LOST OPPOR-TUNITIES, INDIRECT, CONSE-QUENTIAL, EXEMPLARY, SPE-CIAL, INCIDENTAL, OR PUNITIVE DAMAGES EVEN IF CONTRACTOR HAS BEEN ADVISED OF THE POS-SIBILITY OF· SUCH DAMAGES. IN ANY EVENT, THE AGGREGATE LI-ABILITY OF CONTRACTOR TO COMPANY FOR ANY REASON AND UPON ANY CAUSE OF ACTION SHALL BE LIMITED TO ONE HUN-DRED PERCENT (100%) OF THE AMOUNT ACTUALLY· PAID TO CONTRACTOR BY COMPANY UN-DER THIS AGREEMENT. THIS LIMITATION APPLIES TO ALL CAUSES OF ACTION IN THE AG-GREGATE, INCLUDING, WITHOUT LIMITATION, BREACH OF CON-

---

7. The limitation of liability provision in this case thus could have no effect on a judgment founded on the jury's affirmative finding White Lion engaged in false, misleading, or deceptive acts or practices and its corre-

·sponding damages finding. As noted, however-er, the court's judgment was based instead on the finding White Lion failed to comply with a warranty and the greater damages awarded for that conduct.

TRACT, BREACH OF WARRANTY, NEGLIGENCE, STRICT LIABILITY, MISREPRESENTATIONS, AND OTHER CONTRACTUAL OR TORTIOUS CLAIMS.

Under White Lion's argument, the trial court erred by failing to apply the liability limitation only if it was required to do so as a matter of law. It is undisputed that the amount actually paid by Stratified Data to White Lion, with taxes, was $85,069.89. The court's judgment included damages of $20,812.50. Even with interest, the judgment amount would not reach $85,069.89 without the attorney's fees award also included in the judgment. White Lion contends the agreement clearly and unambiguously states that attorney's fees are included within the phrase "aggregate liability of contractor to company for any reason and upon any cause of action" in the limitation of liability. We do not agree.

A contract is unambiguous if its language is open to only one reasonable interpretation. *N. Shore Energy, L.L.C. v. Harkins*, 501 S.W.3d 598, 602 (Tex. 2016) (per curiam). The limitation of liability paragraph contains no mention of attorney's fees. Another paragraph of their agreement makes clear the parties were conscious of attorney's fees necessary to the enforcement of the agreement. The agreement does not contain a provision generally entitling the prevailing party to attorney's fees in litigation over the agreement. But a paragraph entitled "Injunctive Relief" contains a comparable provision.[8]

White Lion points to case law holding parties to a contract may limit the recovery of attorney's fees. *See, e.g., Twelve Oaks Tower I v. Premier Allergy*, 938 S.W.2d 102, 118 (Tex. App.—Houston [14th Dist.] 1996, no writ). The contract language at issue in *Twelve Oaks* is illustrative, however, of language directly addressing the subject of attorney's fees. We do not find persuasive White Lion's argument that the contractual language here, containing no reference to such fees, can reasonably be read only to constitute a limitation on recovery of attorney's fees. Accordingly, we conclude the court did not err by failing to modify its judgment to limit Stratified Data's recovery. We overrule White Lion's point of error on cross-appeal.

## Conclusion

Having overruled all issues presented, we affirm the judgment of the trial court.

---

8. Injunctive Relief. Contractor acknowledges and agrees that the services to be rendered by Contractor to Company hereunder are of a special and unique character and that any breach of the covenants herein by Contractor would cause irreparable harm. Company shall have the right to injunctive relief, in addition to all of its other rights and remedies at law or in equity, to enforce the provisions of this Agreement. If Company is awarded an injunction or other remedy in connection with the enforcement of such provisions, Contractor further agrees to pay all costs and expenses (including attorneys' fees) reasonably incurred by Company in such enforcement effort.