

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00230-CV

———————————————

MDT FRANKFORD VILLAGE, LTD., Appellant

V.

SAI JBA, INC., A TEXAS CORPORATION, AND ANSHUL SHRESTHA,
Appellees

On Appeal from County Court at Law No. 2
Denton County, Texas
Trial Court No. CV-2022-03931

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

Appellant MDT Frankford Village, Ltd. appeals from the trial court's judgment awarding it $21,492.00 from Appellee SAI JBA, Inc., its former tenant, and Appellee Anshul Shrestha, who executed a guaranty of the lease, for unpaid rent, monthly operating expenses, and other leasehold expenses. In two issues, MDT argues that the evidence was insufficient to support the trial court's damages award and asserts that its damages were "at least $32,244.51." Because we conclude that the evidence was factually insufficient to support the trial court's damages award, we reverse and remand for a new trial.

## I. Background

MDT leased space in a shopping center to SAI. The parties signed a five-year lease agreement—February 2021 to May 2026—and Shrestha executed a guaranty of SAI's obligations under the lease agreement. As an incentive for SAI's signing the lease, MDT waived SAI's rent payments for the first four months of the lease term— February 2021 to May 2021. SAI's first rent payment was due on June 1, 2021. Per the lease agreement, SAI's rent payments were $2,197.03 per month from June 1, 2021, to May 31, 2022, with the monthly rent increasing by $100 each subsequent year of the lease term.

The relevant provisions of the lease stated that the leased premises "shall be used and occupied solely for a beer and wine store and for no other purpose" and that SAI "acknowledges and agrees that the [p]ermitted [u]se of the [l]eased [p]remises set

2

forth herein is a critical element of the bargain." The lease also contained penalty provisions in the event of default. For example, the lease allowed MDT to relet the leased premises in the event of SAI's default and required SAI to pay the costs of reletting, "including[] but not limited to . . . reasonable attorneys' fees and brokerage commissions related to obtaining possession and making a new lease with another tenant, free rent or concessions, lease assumptions[,] and any other costs reasonably associated with reletting the [l]eased [p]remises." The lease also gave MDT the right to recover from SAI "all accrued [r]ent" and "the present value of all the aggregate [r]ent for the remaining balance of the [l]ease [t]erm," including late fees, taxes, and operating expenses. Events of default included failing to pay base rent, taxes, operating expenses, or other rent; failing to observe an agreement or condition pursuant to the lease and failing to remedy the failure within three days of written notice by MDT; vacating the leased premises; or violating the provision of the lease related to the signage and display requirements on the premises.

After SAI moved into the leased premises, it displayed unapproved signs and proposed to engage in the sale of vapes, tobacco products, and lotto tickets. SAI also set up gambling machines at the leased premises. MDT refused permission for SAI's deviation from the permitted use of the leased premises, and SAI refused to remove the gambling machines when demanded to do so by MDT.

SAI eventually defaulted on its rent payments and vacated the leased premises. In accordance with the lease agreement, MDT subsequently exercised its right to relet

3

the leased premises and found a new tenant. The new tenant's lease term began on March 1, 2023, but as an incentive to sign the lease, MDT offered the new tenant five months' free rent—March 2023 to July 2023. The new tenant's first rent payment was due on August 1, 2023. However, the new tenant's rent payments were slightly less than those of SAI.

In November 2022—before it relet the leased premises—MDT sued SAI and Shrestha for breaching the lease agreement. MDT sought recovery of unpaid rent and "other charges" owed by SAI and Shrestha pursuant to the lease agreement. Specifically, it asserted that SAI and Shrestha owed $3,880.18 through November 2022 and that the amount would increase monthly by $3,441.96. MDT requested its asserted damages, plus interest, and "additional charges as they accrue[d] until time of trial."

The case went to trial in February 2024. Following a bench trial, the trial court awarded MDT $21,492.00 in damages "for unpaid rent, monthly operating expenses, and other leasehold expenses through January[] 2024," plus interest and $7,410.00 in attorney's fees. The trial court's judgment did not specify how it calculated or allocated its damages award, and the trial court did not file findings of fact and conclusions of law.

MDT subsequently filed a motion for new trial asserting that the proper damages award was $47,464.81. The trial court denied MDT's motion, and MDT timely appealed.

4

## II. Discussion

The parties do not dispute whether SAI breached the lease agreement—only the amount of MDT's damages. MDT challenges the legal and factual sufficiency of the evidence supporting the trial court's damages award of only $21,492.00. MDT contends that the evidence established that its damages were "in excess of" that amount and asks this court to modify the damages award and render judgment awarding "at least $32,244.51 . . . which is the undisputed unpaid base rent, plus the undisputed late rent charges, plus the undisputed pro rata commission for the re-leasing of the premises."

In an appeal rendered from a judgment after a bench trial, the trial court's findings have the same weight as a jury's verdict and may be challenged for legal and factual sufficiency in the same manner. *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When, as here, the trial court does not file findings of fact and conclusions of law, we imply all necessary findings to support the trial court's judgment. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017).

### A. Legal sufficiency

In its legal sufficiency challenge, MDT argues that there was no evidence supporting the trial court's $21,492.00 damages award and that "the evidence conclusively established as a matter of law" that its damages were "at least $32,244.51." While we agree that no evidence supports the $21,492.00 damages

5

award, we disagree that the evidence conclusively established a $32,244.51 damages award.

### 1. Standard of Review

We may sustain a legal sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

When a party attacks the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Cath. Diocese of El Paso v. Porter*, 622 S.W.3d 824, 834 (Tex. 2021). In reviewing a "matter of law" challenge, we must first examine the record for evidence that supports the

6

finding, while ignoring all evidence to the contrary. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). If no evidence supports the finding, then we will examine the entire record to determine if the contrary position is established as a matter of law. *Id.* We will sustain the issue only if the contrary position is conclusively established. *Id.* Evidence conclusively establishes a fact when the evidence leaves "no room for ordinary minds to differ as to the conclusion to be drawn from it." *Int'l Bus. Mach. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 235 (Tex. 2019).

### 2. Analysis

After examining the record, we conclude that no evidence supports the trial court's damages award of $21,492.00. The lease agreement expressly provided that in the event of SAI's default, MDT could recover, among other things, unpaid rent and the costs of reletting, including brokerage commissions and free rent or concessions. Based only on the unpaid rent, commissions, and free rent or concessions amounts,[1] MDT was entitled to damages in excess of $21,492.00.

At trial, MDT provided, without objection, the lease agreement with SAI; a ledger describing SAI's charges, payments, and balances associated with the lease through July 1, 2023; the lease agreement with the new tenant; and an invoice to MDT for commissions related to reletting the premises. MDT's unobjected-to

---

[1]The lease agreement also provided for additional recovery in the event that SAI violated the permitted use provision of the lease or in the event that SAI "vacate[d], abandon[ed,] or desert[ed] the [l]eased [p]remises[] or . . . cease[d] to operate its business therein as provided in th[e] [l]ease." However, MDT did not specify in its petition whether the "other charges" it sought to recover included this recovery.

evidence showed that SAI failed to make its monthly rent payments for October 2022, November 2022, December 2022, January 2023, and February 2023.[2] At $2,297.03 per month, SAI owed $11,485.15 in unpaid rent for five months. MDT's evidence also showed that SAI owed $11,485.15 in reletting costs for the five months that the new tenant was given free rent or concessions as incentive for signing the lease: March 2023, April 2023, May 2023, June 2023, and July 2023. And MDT's evidence showed that the prorated commission for reletting the premises was $3,677.18. Based on this evidence, MDT was entitled to, at a minimum, $26,647.48 in damages. Thus, no evidence supports the trial court's damages award of $21,492.00.

Because no evidence supports the $21,492.00 damages award, we must determine whether a damages award of "at least $32,244.51" was established as a matter of law. *See Dow Chem. Co.*, 46 S.W.3d at 241. Having examined the entire record, we conclude that it was not. As discussed above, MDT's evidence showed that it was owed $26,647.48 in damages based on unpaid rent, commissions, and free rent or concessions for reletting the premises. This amount did not include any late fees, taxes, operating expenses, or other applicable recovery per the lease agreement. Other evidence showed that MDT was owed more in damages, but the evidence was inconsistent in the amounts.

[2]Shrestha testified that, while he "den[ied] a few of the late charges," he agreed with MDT's ledger reflecting that through February 2023, SAI was responsible for $14,713.07 in damages—which, notably, included all the late charges. He asked the trial court to hold him responsible only to that amount and not for anything at or beyond the time that MDT relet the premises to the new tenant in March 2023.

Before trial, MDT filed a motion for summary judgment and an amended motion for summary judgment. In its first motion, which was filed approximately one month before MDT relet the premises, MDT asserted that it was owed $13,147.84 in damages, which did not include the costs of reletting.[3] In its amended motion, which was filed approximately one month after MDT relet the premises, MDT asserted that it was owed $43,964.81 in damages. At trial, the ledger provided by MDT also indicated that SAI owed a balance of $43,964.81 based on unpaid rent, commissions, late fees, taxes, insurance, and maintenance. MDT's representative testified that the $43,964.81 amount reflected the amount of SAI's deficiency through July 2023. But in its closing argument, MDT asserted that it was owed $45,554.77 through July 2023. Then, in its motion for new trial, MDT filed another ledger showing a $47,464.81 balance and asserted that it was owed that amount in damages.

Our examination of the record demonstrates that the trial court heard varying evidence of damages ranging from $26,647.48 to $47,464.81 but that no particular amount of damages was conclusively established as a matter of law.[4] Accordingly,

---

[3]With its motion, MDT filed an affidavit from MDT's "Manager." The Manager asserted that, as of December 2022, SAI owed $6,969.40 and that "[t]his amount increase[d] monthly by $3,089.22." In its original petition, however, MDT asserted that, as of November 2022, SAI owed $3,880.18, which would increase monthly by $3,441.96. Nowhere in the record does MDT explain the ambiguity in the two increasing monthly amounts or how those amounts were calculated.

[4]Creating further ambiguity, in its brief, MDT claims both that it was entitled to "at least" $32,244.51 in damages and that "the evidence conclusively establishe[d]" that it was entitled to $28,944.51 in damages. MDT's failure to allege a specific

because the evidence failed to establish a particular amount of damages as a matter of law, MDT's legal sufficiency challenge must fail. *See Alfia v. Overseas Serv. Haus, Inc.*, No. 05-11-01390-CV, 2013 WL 3477345, at *6 (Tex. App.—Dallas July 9, 2013, no pet.) (mem. op.) ("[B]ecause there is inconsistency in the damages evidence . . . , we cannot conclude the evidence established [the requested amount] in damages as a matter of law."); *Kitchen*, 181 S.W.3d at 475 (overruling legal sufficiency challenge "because the evidence failed to establish a particular value . . . as a matter of law").

## B. Factual sufficiency

In its factual sufficiency challenge, MDT argues that the trial court's damages award of $21,492.00 was against the great weight and preponderance of the evidence. We agree.

### 1. Standard of Review

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the evidence supporting the finding is so weak, or so contrary, to the overwhelming weight of all evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). When the party with the burden of proof

amount of damages is fatal to its legal sufficiency argument. *See Kitchen v. Frusher*, 181 S.W.3d 467, 475 n.5 (Tex. App.—Fort Worth 2005, no pet.) (op. on reh'g) (citing *Ponce v. Sandoval*, 68 S.W.3d 799, 809 (Tex. App.—Amarillo 2001, no pet.)).

10

appeals from a failure to find, the party must show that the failure to find is against the great weight and preponderance of the credible evidence. *Dow Chem. Co.*, 46 S.W.3d at 242; *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988); *see Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681–82 (Tex. 2006).

Findings of fact are the exclusive providence of the factfinder. *Bellefonte Underwriters Ins. v. Brown*, 704 S.W.2d 742, 744 (Tex. 1986). The factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *City of Keller*, 168 S.W.3d at 819; *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Thus, a court of appeals cannot make original findings of facts; it can only "unfind" facts. *Tex. Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex. 1986).

If the court of appeals sustains an issue because the evidence is factually insufficient, it must reverse the trial court's judgment and remand for a new trial. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401–02 (Tex. 1981). This court has no jurisdiction to render judgment based on an insufficient-evidence or great-weight-and-preponderance issue. *Wright Way Spraying Serv. v. Butler*, 690 S.W.2d 897, 898 (Tex. 1985); *see In re King's Est.*, 244 S.W.2d 660, 662 (Tex. 1951).

### 2. Analysis

As discussed in detail above, the record contains varying evidence of damages ranging from $26,647.48 to $47,464.81. It does not, however, contain any evidence of damages in the amount of $21,492.00. While "[e]vidence corresponding to the exact amount found by the trier of fact is not essential[,] . . . the verdict must fall within the

range of the evidence presented," and a trier of fact "may not 'pull figures out of a hat' in assessing damages." *338 Indus., LLC v. Point Com, LLC*, 530 S.W.3d 729, 735 (Tex. App.—Amarillo 2017, pet. denied) (quoting *CCC Grp., Inc. v. S. Cent. Cement, Ltd.*, 450 S.W.3d 191, 200 (Tex. App.—Houston [1st Dist.] 2014, no pet.)). The trial court's failure to find that MDT could recover damages in an amount that fell within $26,647.48 and $47,464.81 was against the great weight and preponderance of the credible evidence. *See Dow Chem. Co.*, 46 S.W.3d at 242.

Accordingly, we conclude that the evidence is factually insufficient to support the trial court's finding of $21,492.00 in damages, and we sustain MDT's factual sufficiency challenge.

### III. Conclusion

Having sustained MDT's factual sufficiency challenge, we reverse the trial court's judgment and remand this case for a new trial on the issue of the proper amount of damages to be awarded to MDT.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: August 26, 2025